GERMAN STATE BANK v. MINNEAPOLIS, ST. P. & S. STE. M. RY. CO.

(Circuit Court, D. Minnesota, Fourth Division. September 18, 1901.)

1. RAILROADS—CARRIAGE OF MAIL—NEGLIGENCE—LOSS OF PACKAGE—LIABILITY.

A railroad carrying mail for the government owes no duty to the addressee of a package rendering the railroad liable for the loss of the same through its negligence.

2. SAME—DEGREE OF CARE.

Conceding that a railroad may be held liable by the addressee of a package for the loss of the same in the mail through the railroad's negligence, the degree of care required is only the reasonable care exacted of an ordinary bailee for hire.

3. SAME—COMPLAINT—ALLEGATION—SUFFICIENCY.

A complaint in an action against a railroad company alleged the mailing of a valuable package to complainant, and its carriage by the railroad company to its station, where it was alleged that the mail sack was delivered to defendant's station agent, whose duty it was to safely care for the mail sack during the night; that the agent left the station, and that a road master or foreman of the railroad entered the station, and with a false key opened the mail sack; and that such foreman had access to the office or room where the mail sack was deposited, and was permitted to go and come therefrom at will. *Held*, that the facts stated in the complaint failed to show a lack of ordinary care on the part of the railroad.

Action by the German State Bank against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Judgment sustaining demurrer to the complaint, with leave to plaintiff to amend.

Dale & Allen and Geo. W. Brown (Henry Conlin, of counsel), for plaintiff.

Alfred H. Bright, for defendant.

LOCHREN, District Judge. This case is presented by demurrer to the complaint, which alleges, in substance, that on November 10, 1900, the Metropolitan Bank deposited in the United States mail at Minneapolis, in a prepaid and duly registered letter or package, addressed to the plaintiff at Harvey, N. D., the sum of $3,000 in currency, which therefore became the property of the plaintiff, who was then insured against the risks of the transportation of such money by the Bankers' Mutual Casualty Company of Des Moines, Iowa, under a policy of insurance, a copy of which is attached to the complaint. The mail sack containing said package was carried in a mail car in defendant's railroad from Minneapolis to Harvey under the exclusive control of postal clerks, who delivered said mail sack, duly locked, and containing said package, to defendant's night station agent at said Harvey, who was not an employé of the post-office department, and whose duty, on behalf of defendant, it was to safely care for and guard said mail sack and its contents during the night, and safely deliver the same to the postmaster at the Harvey post office, which was within 80 rods of the railway station. The night station agent deposited the mail sack in a room in the depot, and absented himself therefrom for a time, during which one Soule, a road master or foreman of defendant, entered the room, and with a key which he had caused to be made unlocked the mail sack, and took

said package, and stole the money.   The Bankers' Casualty Company, pursuant to its contract of insurance, has paid said sum of $3,000 to the plaintiff, who brings this suit for the benefit of the insurer.

1.  The federal government has from the first assumed the absolute and exclusive control and performance of the postal service of the country under the express provision of the constitution authorizing congress to establish post offices and post roads.   The function so exercised is governmental, as it is calculated to produce revenue, more or less as the policy of the government may dictate; and it is intended to minister to the general welfare by furnishing to all persons, and between all parts of the country, and reaching to other countries, means of communication as rapid and safe as can be devised, and protected by the safeguards provided by law.   The government prescribes what matter shall be mailable, and the rates of postage, and the manner of payment of the same.   These matters are regulated by law, and are not left open for negotiation or contract.   No idea of contract has any place in the scheme.   The government tolerates no competitor in the exercise of this function, but forbids under penalties the sending or carrying of sealed letters otherwise than in its mails.   It permits, but does not compel, the sending of packages which may contain articles of value in its mails; but if a person avails himself of this permission the package enters the mail, and is entitled to the same care as any letter and no greater. The provision for registration applies equally to letters and other packages, and only aids in tracing their course and carriage.   The government itself receives, handles, assorts, and carries the mails, and delivers the same as addressed.   The postal officials, of whatever grade, and carriers, of whatever kind, are the servants of the government,—the hands which it employs in the performance of its functions.   With the exceptions presently to be mentioned, I think it may be safely asserted that these servants are not in privity with, and owe no duty to, any one except the government, to whom their fidelity is sought to be assured by provisions of the postal laws, penal and otherwise.   The exceptions are the cases where the duty of such servant, whether postmaster, clerk, or distributing carrier, requires him to assume to do an act personal to a known or designated individual,—such as receiving from him a letter or package to be placed in the mail,—in which case he would owe him the duty of using ordinary care to place it in the mail, or in the proper receptacle for mailing; or if such servant should receive through the mail a letter or package which it became his duty to deliver to the person addressed, he would owe that person the duty of using ordinary care in making safe and prompt delivery of the same.   A railway company carrying the mails does not assume as to them any of the duties or responsibilities of a common carrier.   No one but the government can require or receive such service, and the duties and responsibilities of such railway carrier of mails are measured by the terms of the contract, and by the provisions of the postal laws and regulations.   The mails are not in the care, custody, or control of the railway company during the carriage, but under exclusive control of the railway postal

clerks, in separate cars or compartments, fitted especially for that service. As to the safety of the persons of such clerks the railway company assumes the same duty which rests upon it respecting other persons lawfully being carried on its trains. But as to the mail itself it has no duty except what it owes the government, its employer. It has no notice or means of knowledge of the contents of mail sacks, nor as to who has sent or who is entitled to receive the letters or packages. · It never was employed by such persons, has no privity with them, and owes to them, severally and personally, no duty whatever. Were it otherwise, then when, as often happens, cars are wrecked and burned, and the mail destroyed, as the result of negligence for which the railway company is in law responsible, so that recoveries against it are had for personal injuries, and for all destruction of luggage and merchandise, the courts would be burdened with actions to recover for the loss of valuable packages claimed to have been in the mail; affording such opportunity for fictitious claims as might speedily compel railways to refuse such hazardous employment. The fact that no such litigation has ever arisen is decisive against the claim that a railway company owes any duty to the sender or addressee or owner of the contents of any letter or package contained in the mails which can be made the basis of an action at law. As above stated, the law requires that all letters sent from place to place be sent by the mail. But there is no such requirement in respect to valuable packages, which may lawfully be sent through express companies, or by other responsible carriers. The postal service has become so efficient, speedy, and safe that, in view of its cheapness, many persons send valuable packages by post, taking the risk themselves, rather than pay more to responsible carriers, who make charges with some reference to the value of the article and consequent amount of the risk assumed.

2. But if it were conceded that under some circumstances an action of this kind can be maintained by the owner of a package lost from the mail against a railway carrier of the mail, no liability can arise under the facts stated in this complaint. If any privity can be imagined as existing between the railway carrier between distant places and the owner of a package in the closed mail sack, and that the railway company owes such package owner a duty to exercise care in the carriage of that especial package, it would not be that degree of care and of responsibility which rests upon a common carrier, but at most the reasonable care which an ordinary bailee for hire must exercise in respect to the article which is the subject of the bailment. There is in such case no responsibility if the article is stolen, even by a servant of the bailee, if the bailee has taken and caused to be taken reasonable care under the circumstances. Under the allegations of the complaint, and upon the theory of the concession suggested, the bailment would not cease until the mail sack containing the package was delivered at the post office at Harvey, which was within 80 rods of defendant's depot. It is alleged that the mail sack was delivered to defendant's night station agent, whose duty it was "to safely care for and guard said mail sack and its contents during the night." It must be in-

ferred from this that the mail sack reached that depot too late in the night to be received at the post office before the following morning, and hence must be stored in the depot, as in a warehouse, for the night. There is no allegation that it was not put in a safe place in the depot, guarded by such sufficient locks as would be reasonable in such case. The only attempted allegation of negligence is that the night station agent, after receiving the mail sack, "did negligently leave said depot, and did absent himself therefrom for a period of time to this plaintiff unknown, and thereby defendant failed to safely keep and care for said mail sack and its contents." As I cannot hold that defendant's duty in respect to the mail sack under the circumstances required that the station agent should sit on the mail sack the balance of the night, and keep awake, I think the allegation just quoted fails to charge any negligence.

The remaining allegations are to the effect that one Soule, a road master or foreman of the defendant at Harvey, entered the depot, and with a false key opened the mail sack, and stole the package of money. The employment of Soule by the defendant, and the allegation that he had "access to the office or room where said mail sack was deposited, and was permitted to go and come therefrom at will," do not sustain any inference of lack of reasonable care. No facts are stated tending to show that defendant had any reason to regard Soule as other than honest and trustworthy; and the responsible character of his employment indicates that he was so regarded. The allegation that he had access to the room, and was "permitted to go and come therefrom at will," with defendant's knowledge, is too vague and indefinite, and requires too heavy a draft on the imagination, to lead me to regard it as a statement that Soule had, with defendant's knowledge and consent, such access or permission in the nighttime, or at any time other than when the occupations of his employment might properly direct him there.

The statement of the second ground of demurrer only specifies what may be a separate reason for sustaining the demurrer on the general ground.

The demurrer is sustained, with leave to the plaintiff to amend its complaint on or before the November rule day.