(37 South. 980.)

No. 15,240.

ALLEN & CURREY MFG. CO., Limited, v. SHREVEPORT WATERWORKS CO.

(Jan. 16, 1905.)

WATERWORKS FRANCHISE—CONSTRUCTION—PERFORMANCE—ENFORCEMENT—WATER FOR FIRE DEPARTMENT — BREACH — RIGHT OF ACTION—LIABILITY OF CITY — PROTECTION AGAINST FIRE.

1. A contract by which the waterworks franchise of a city is granted on condition that the contractor shall supply the inhabitants with water at a fixed maximum rate for private use, and shall rent a specified number of fire hydrants to the city at a fixed rental, payable yearly out of the corporate treasury, and shall keep said hydrants in good order, with a specified pressure of water for extinguishing fires, flushing sewers, engine houses, public parks, public schools, and other public buildings, contains a double set of stipulations and engagements—one in favor of the inhabitants individually, for the enforcement of the performance of which or for the breach of which they have a right of action individually, and one in favor of the municipal corporation, for the enforcement of the performance of which or for the breach of which the inhabitants have individually no right of action.

2. The municipal corporation and the inhabitants of its territory are, in law, distinct, separate persons, and the corporation is not the mandatary of the inhabitants individually for entering into contracts for them individually. From the fact that the inhabitants are interested that the obligations of contractors towards the municipal corporation should be faithfully complied with, or from the fact that they, as tax-payers, contribute the money with which the payments under the contracts of the municipality have to be made, it does not follow that the inhabitants are principals in the contracts entered into by the corporation, and as such have a right of action thereon.

3. The above-mentioned engagement of the waterworks contractor to lease fire hydrants and furnish water to the city for the use of her fire department was an engagement in favor of the city, and not in favor of the inhabitants individually. It was not a stipulation pour autrui in their favor, and they have no right of action thereon.

4. Notwithstanding the apparent requirement of the Code of Practice (art. 35) that the stipulation pour autrui, in order to entitle the beneficiary of it to an action upon it, should be express, such stipulation pour autrui may result from implication. Form is not sacramental. The question in every case must be simply as to whether or not the contractants intended to confer a right of action.

5. A municipal corporation, being nothing more than a fictitious being created for the sole and exclusive purpose of administering the public interest, every contract entered into by it is necessarily so entered into "in the public interest"; and every contract entered into for the benefit of its fire department is necessarily so entered into "in consideration of the public benefit and of the protection to property" to result therefrom. Hence the recital in a contract that it is entered into by the corporation from those motives does not have the effect of making the contract a stipulation pour autrui in favor of the inhabitants individually, upon which the inhabitants or any of them may individually bring suit. If it did, every municipal contract would be a stipulation pour autrui.

6. A contract entered into by a municipal corporation for supplying its fire department with water must find its sanction in the right of the city to demand specific performance, or damages or the revocation of the contract for nonperformance, and not in any right on the part of the inhabitants individually to recover damages for losses sustained as a consequence of the inefficiency of the fire department of the city, brought about by the failure of the contractor to fulfill his contract. Unless a person is privy to a contract, either from having been a party to it originally, or from having accepted a stipulation made therein in his favor, he cannot recover damages for its breach, no matter how directly the damages may result from the breach; and the fact that no one else can sue for the damages, or that they cannot be sued for at all, unless by him, makes absolutely no difference. Breaches of contract resulting in losses for which no one may bring suit are not of unfrequent occurrence.

7. No liability to damages in favor of her inhabitants or corporators lies upon a city for the nonperformance or negligent performance of her duty to furnish water to her fire department

for protecting the property within her corporate limits from fire. Hence no duty rests upon her to impose such liability upon a contractor stepping into her shoes for performing such duty.

8. The city of Shreveport being without authority to make herself liable to her inhabitants for any losses suffered by them as a result of her negligent discharge of her duty to furnish water for the protection of their property against fire, she necessarily is likewise without authority to hire some one else to assume such a liability. Such assumption of liability would have to be paid for out of the corporate treasury, and the city would only be doing indirectly what she could not do directly.

9. The decision of this court in Planters' Oil-mill v. Monroe, 27 South. 684, 52 La. Ann. 1243, is overruled.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by the Allen & Currey Manufacturing Company, Limited, against the Shreveport Waterworks Company. Judgment for plaintiff, and defendant appeals. Reversed.

Farrar, Jonas & Kruttschnitt and Wise, Randolph & Randall, for appellant. Thatcher & Welsh and Alexander & Wilkinson (Fenner, Henderson & Fenner, of counsel), for appellee.

PROVOSTY, J. The plaintiffs' lumber manufactory in the city of Shreveport was destroyed by fire, and plaintiffs bring this suit in damages for the loss against the Shreveport Waterworks Company, a private corporation having the waterworks franchise of the city of Shreveport.

The complaint is that in consequence of the neglect and failure of the plaintiff company to keep its hydrants in good order, as it was by its contract expressly obligated to do, the hydrant to which the firemen first attached their hose could not be opened, and that, but for the time lost in vain efforts to open this hydrant, and in detaching the hose from the same and attaching them to the next nearest hydrant, the fire would have been put out, and the loss averted. The trouble with the hydrant was that the shank designed to open the valve turned in its socket, instead of turning the valve; it having become round; its edges or corners by which it was anchored to the valve having disappeared. Plaintiffs contend that these edges or corners had been worn away by use or eaten by rust. Defendant contends that they were wrenched off by a too sudden application of force by the excited firemen, and that, moreover, even if the hydrants had worked to perfection, the fire could not have been put out, it having already attained too much headway. Another contention of defendant is that its contract with regard to the hydrants and keeping them in order was a lease, and its obligations those of a lessor, and that a lessor is not liable in damages for the nonrepair of the thing leased, until he has been put in default with reference thereto, and that there is in this case no allegation, and still less proof, of such putting in default.

But all these questions will not have to be gone into, since the court agrees with defendant on another defense, which in logical order comes up first, and which disposes of the case. It is that plaintiffs are not privy to the contract sued on, and therefore have no action on it. In logical order, that defense must be considered first, for, if plaintiffs have no action on the contract, they have no standing to discuss its nature or its breach.

As a matter of course, plaintiffs do not pretend that a person not privy to a contract may have an action upon it, but they claim that they are privy to the contract between the city and the defendant company.

A person can become a party to a contract in only one of two ways: First, by entering into it himself, either directly or through an agent; or, secondly, by accepting a stipulation made in his favor by the contractants, he remaining a third person and stranger to

it until by accepting the stipulation he becomes a party. Such a stipulation is called in the civil law a "stipulation pour autrui"; "autrui" meaning some one else, or a third person; that is to say, a person not party to the contract.

These two ways of becoming a party to a contract are necessarily exclusive of each other, since a person cannot be a party to a contract, either directly or through an agent, and at the same time be autrui, or a third person or stranger to it. If we understand the argument of the learned counsel for plaintiffs rightly, however, their contention is that plaintiffs became parties to this contract in both ways; that is to say, that they are parties because the city entered into the contract as their agent—that is to say, as the agent of the inhabitants and corporators, among whom they are numbered—and also because the stipulation of the contract was in their favor, as third persons, and by the present suit they have accepted it. The two contentions were blended in learned counsel's argument, but for clear discussion they must be dealt with separately.

It is as principal that the city entered into the contract, so far as appears from the face of the contract. But the learned counsel argue that the authority given to the city by its charter to provide the means and make regulations for preventing and extinguishing conflagrations, under which the contract was entered into, was thus given for the benefit of the inhabitants or corporators of the city, and to be exercised by the city in her private character, as their representative or agent, and not in her public or governmental character, as the representative or agent of the state or public at large; that these inhabitants or corporators, as the prospective consumers of by far the greater part of the water to be furnished under the contract, and as the owners of by far the greater part of the property to be protected against fire, and as the taxpayers out of

whose pockets the payments under the contract would have to come, were, with the defendant company, the main parties in interest (the distinctive corporate interest of the city having been insignificant by comparison), and that therefore they (the inhabitants or corporators, and plaintiffs among them) were the principals in the contract, and the city merely their agent for entering into it.

This argument does not take sufficient account of the separateness between the municipal corporation and its corporators. Whether the city acted in her governmental or in her private character, still she acted as a corporation, and a corporation does not hold any mandate from its corporators to represent them individually in making contracts. Whether there is, or not, under general jurisprudence, any foundation for the contention that it does, there can be absolutely none whatever under the régime of our Civil Code. The provisions of our Code bearing upon the legal relations between the corporation and its corporators are the following:

"Art. 427. A corporation is an intellectual body created by law, composed of individuals united under a common name, the members of which succeed each other, so that the body continues always the same, notwithstanding the change of the individuals which compose it, and which, for certain purposes, is considered a natural person."

"Art. 433. Corporations legally established are substituted for persons, and their union, which renders common to all those who compose them, their interests, their rights and their privileges, is the reason why they are considered one single whole. Hence it follows that they may possess an estate, and have a common treasury for the purpose of depositing their money; that they are capable of receiving legacies and donations; that they may make valid contracts, obligate others and obligate themselves toward others; exercise the rights which belong to them; manage their own affairs; appear in courts of justice, and even enact statutes and regulations for their own government, provided that such statutes and regulations be not contrary to the laws of the political society of which they are members."

"Art. 435. Corporations are intellectual beings, different and distinct from all the persons who compose them.

"Art. 436. The estate and rights of a corporation belong so completely to the body that none of the individuals who compose it can dispose of any part of them," etc.

"Art. 437. According to the above rule, what is due to a corporation is not due to any of the individuals who compose it, and vice versa," etc.

Under these provisions, the corporation and its corporators are distinct, separate, different persons—as much so, legally speaking, as ordinary persons, and with no more authority to act as agents for each other than ordinary persons have. A departure from this rule has been permitted ex necessitate in certain cases of a highly exceptional character, where the corporator has been allowed to champion the rights of the corporation, but never has the corporation been permitted to champion the individual rights of the corporators.

Doubtless appreciating the strength of this legal situation, the learned counsel seek to escape from it by qualifying the alleged agency of the city. "The inhabitants," they say, "if not technically, were substantially, parties to the contract, because they constituted the corporation, which, in making the contract, acted not only for their benefit, but as their agent." Waiving academic discussion of the distinction here attempted to be drawn between a technical and substantial agency, and bringing the matter at once to the test of a concrete case, we will say that this contract was a commutative contract, into which no agent could enter, unless empowered to bind his principal to something, and that counsel will not gainsay that the city of Shreveport was without authority whatever to bind its inhabitants individually to anything by this contract. She was not, then, their agent for entering into it. It is simply impossible so to constitute an agent that, while having no authority to bind his principal to anything, he may enter into a commutative contract for him—may stipulate onerous obligations in his favor, but none in return against him.

Another test is this: By ratification, any contract entered into by an agent or by a negotiorum gestor becomes absolutely that of the principal. The agent disappears, and the principal remains in the contract. And obligations due under the contract become his alone. Now, in this contract there is nothing that the inhabitants or corporators individually could possibly ratify, and there are no obligations that they could possibly assume. We have reference, of course, to that part of the contract upon which this suit is brought, and not to another part of it not involved in this suit. The part sued on, as will be seen presently, is the engagement of the defendant company to furnish water to the city for the use of her fire department, in consideration of the payment of certain rentals, to be provided for by the city in her annual budgets. There is here absolutely nothing that the inhabitants individually could ratify as principals, and no obligation that they could possibly assume.

From the fact that the corporators had an interest in the contract being faithfully carried out, it does not follow that the city was their mandatary or their negotiorum gestor for entering into it. I have the most direct kind of an interest in the subcontracts entered into by the contract or who is building my house, and yet no one would say that I am a principal in such subcontracts, or that I have a right of action thereon. If, fearing danger of fire to my house from the proximity of my neighbor's, I contract with a water company to protect my neighbor's house against fire, and through the negligence of the water company my neighbor's house burns down, my neighbor, though he had a more direct and perhaps a greater interest in the contract than I had, cannot sue upon it under the pretense that I was his agent for entering into it. Indeed, if my house came out of the ordeal unscathed, so that the event demonstrated that my neighbor alone had an interest in the contract, and I absolutely

none, still I should not have been his agent for entering into it, nor he have an action upon it.

Nor does the payment of taxes have the effect of constituting the municipal corporation the agent of the corporators in every contract it may enter into. No one would so contend.

The conclusion is inevitable and it is plain that in entering into this contract the city was acting as a principal, and not as the mandatary or negotiorum gestor of the corporators individually.

The alleged agency of the city seems to be urged by plaintiffs in aid of their second contention, that the stipulation to furnish hydrants to the city and keep the same in order was a stipulation pour autrui. But the two propositions being, as already stated, inconsistent, we shall, in discussing the question of stipulation pour autrui, vel non, put aside all consideration of agency, and deal with the case from the standpoint of the plaintiffs having been distinctly third persons to the contract, and of the stipulation having been made in their favor as such, if at all.

The contract is in the form of an ordinance passed by the city council. It is lengthy, and the transcribing of it here would serve no useful purpose. We shall refer only to those parts bearing upon the present discussion. Section 1 reads that the waterworks franchise is granted to the defendant company "in consideration of the public benefit to be derived therefrom," and that the waterworks are to be erected for furnishing water "to the city of Shreveport and its inhabitants." Section 2 fixes the maximum rates that may be charged for water furnished to individuals for private use, including "individual fire protection." Section 3 recites that "in consideration of the public benefit and the protection to property resulting from the construction of the said system of waterworks the mayor and councilmen of

the city of Shreveport hereby rent of the said waterworks company, one hundred and six double nozzle fire hydrants * * * at the rate of $50.00 per hydrant per year," and that, "In consideration of the above named hydrant rental to be paid by the said city of Shreveport, the said Samuel R. Bullock and Co., their associates and assigns, hereby agree to supply all water necessary for the extinguishment of fires, flushing sewers, engine houses, public parks, public fountains, public schools and all other public buildings; to maintain their hydrants, pipes and attachments in good order and working condition, and the head and pressure necessary for good and effective service at all times without additional cost to the city." Section 11 gives the right to the water company to shut off water for the purpose of making extensions or repairs, and provides that "no liability shall attach to the said company for the suspension of the supply of water: provided the repairs or extensions are made and the water turned on again without unnecessary delay." Section 14 obligates the city to make annual appropriations in its budget to meet the payments of the rental of the hydrants.

Analyzing this contract, we find that the waterworks it provides for are to be erected for the double purpose of furnishing water "to the city of Shreveport and its inhabitants"; that is to say, both to the city and to the inhabitants. And we find accordingly that there are in the contract two sets of stipulations and engagements: One in favor of the city of Shreveport (that is to say, in favor of the corporation), and the other in favor of the inhabitants (that is to say, of the inhabitants individually). The city stipulates and the defendant company engages that the inhabitants individually shall be supplied with water at a fixed maximum rate for private use, including "individual fire protection." And the city stipulates and the defendant company engages that there shall be leased to the city certain fire hydrants,

and that, in consideration of the rental to be paid by the city, there shall be supplied through the hydrants, and to the city, their lessee, all the water necessary for "extinguishment of fires, flushing sewers, engine houses," etc.

The articles of our Civil Code and of our Code of Practice on the subject of stipulations pour autrui are the following:

Civ. Code, art. 1890: "A person may also, in his own name, make some advantage for a third person, the condition or consideration of a commutative contract or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked."

Civ. Code, art. 1902: "But a contract in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, cannot be revoked as to the advantage stipulated in his favor without his consent."

Code Prac. art. 35: "An equitable action is that which does not immediately arise from a contract, but from equity in favor of a third person, not a party to it, and for whose benefit certain stipulations have been made; thus, if we stipulate in a contract entered into with another person, and as an express condition of that contract, that this person should pay a certain sum on his account, or give a certain thing to a third person, not a party to the act, that third person has an equitable action against the one who has contracted the obligation to enforce the execution of the stipulation."

Basing themselves upon the terms of this article of the Code of Practice, that one not a party to a contract may have an action upon it when such is the "express condition" of that contract, and also upon the originally restricted meaning of the word "stipulate," expressive of the correlation between the interrogation and the response in the formula used under the Roman law for entering into a contract, the learned counsel for the defendant contend that there cannot be a stipulation pour autrui in the absence of express words to that effect; that a stipulation pour autrui cannot result from implication.

We do not agree entirely with that view, for we do not think that mere form is sacramental in the matter; and we agree with the learned counsel for plaintiffs that the question of stipulation pour autrui, vel non, is a question of what was the intention of the parties, and that that intention must be gathered, just as in the case of any other contract, from reading the contract, as a whole, in the light of the circumstances under which it was entered into. But inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention; and we do not agree with counsel for defendant to this extent—that the implication to overcome that presumption must be so strong as to amount practically to an express declaration.

It was thus strong in the case of Duchamp v. Nicholson, 2 Mart. (N. S.) 672, cited by plaintiffs. That was a suit upon an auctioneer's bond given under a law (Act Jan. 15, 1805) requiring the auctioneer to give bond "conditioned for the faithful performance of his duty as auctioneer towards all persons who shall employ him as such." Here, while the bond was nominally in favor of the state, the real obligee was manifestly the person who should employ the auctioneer. Indeed, the contention in the case was not that the bond did not constitute a stipulation pour autrui, but it was that such a stipulation does not confer a right of action upon the beneficiary of it.

It is held in France that a policy of insurance taken out by an employer for the benefit of his employés, insuring them against the assumed risks of their employment—the employer paying the premiums out of his own pocket—is a stipulation pour autrui, upon which the employé has a right of action. Here, again, the implication would seem to be irresistible, since, if the employé did not have a right of action, no one would have it, and object of the contract would be defeated. Lemiere c. Windherthur, J. P., 1898, part 2, p. 257. But even in so plain a case

the courts at first refused to recognize a stipulation pour autrui. Société c. Soubignac, J. P. 1897, vol. 2, p. 153, and note.

As furnishing instances where the implication was very strong, yet not strong enough to induce the courts to recognize a stipulation pour autrui, the following cases may be cited:

Salmen Brick & Lumber Co. v. Le Sassier, 106 La. 389, 31 South. 7.

That was a suit upon a bond given by a building contractor. The bond was in favor of the owner, and one of its conditions was that the principal should "pay all subcontractors, laborers, mechanids, workmen, and furnishers" of materials. At the time of the execution of the bond there was a law requiring that any owner who entered into a contract with a builder should require of him a bond "for the payment of all workmen, mechanics and laborers and those who furnished materials," etc., and that each of these parties should "have his individual right of action" upon the bond. There was, however, nothing express on the face of the bond to indicate that it had been given in pursuance of that law. In its terms, it was solely in favor of the owner; and, moreover, it was for less than the amount of the building contract, and the law referred to required that the bond provided for by it should be "for the full amount of the building contract." The court held (reversing the Court of Appeal) that there was no stipulation pour autrui, and that the plaintiff, a materialman, did not have a right of action on the bond.

St. Joseph's Association v. Magnier, 16 La. Ann. 338.

The agreement was that either party violating the contract should pay, by way of penalty, a stated amount to the plaintiff. Held not a stipulation pour autrui, and plaintiff had no right of action.

Montastier c. A———, Pau, 1st May, 1900, Sirey, 1900, vol. 2, p. 301, J. P. 1900, part 2, p. 301.

A contract by an employer with a physician to attend to all his sick and injured employés held not a stipulation pour autrui, and employé had no right of action against the physician for breach of contract.

Watts-Ward c. Cels, 20th Dec., 1898, Sirey, 1901, vol. 1, p. 270, J. P. 1901, part 1, p. 270.

A corporation bought a boat load of coal, and, before having paid for it, was put in the hands of a receiver. Held, that a contract by which a person agreed with the receiver to pay this debt was not a stipulation pour autrui, and the seller of the coal had no action upon it.

So, where goods are consigned by A. to B. on a railroad bill of lading naming A. as consignor and B. as consignee, no action for damages to the goods against the railroad for violation of the contract of carriage stipulated in the bill can be brought by C., a third person, who avers that the goods belonged to him. Cass., 20th May, 1897, Sirey, 1897, vol. 1, p. 411.

Pothier says:

"To stipulate that anything shall be delivered or paid to a third person designated by the agreement is not to stipulate for another.

"For instance, if I contract to sell you an estate for a thousand pounds, which it is agreed shall be paid to Peter, it is not for you, but for myself, that I make this stipulation. Peter is only introduced into the agreement as a person to receive the money for me and in my name, and is what the Roman jurists called 'adjectus solutionis gratia.'

"The credit for the sum does not reside with him, but with me; when he receives it, it is on my behalf and in my name; and on his receiving it there arises between him and me either the contract mandate, if my intention was that he should render me an account, or a donation, if it was my intention to give it to him.

"It is not stipulating for another, but for myself, when I stipulate that something shall be done for a third person, if I have a personal and appreciable interest it shall be done; suppose, for instance, I have contracted with him to do it. Thus, if I have engaged to James to rebuild his house in a certain time, and, having other work to do, I contract with a mason that he shall rebuild the house, I stipulate for myself, rather than for James, and the agreement is valid, for, as I am under an obligation to him, and am answerable in damages if the work is not done, I have a real, personal interest that it shall be done. Wherefore, in stipulating that

the mason shall rebuild the house of James, it is only verbo tenus that I stipulate for James; re ipsa and in truth I stipulate for myself and for my own benefit." Pothier, Obligations, Nos. 57, 58.

On the strength of that passage from Pothier, this court held in the case of Tiernan v. Martin, 2 Rob. 523, as follows:

"A stipulation that a certain sum shall be paid to a third person towards the extinguishment of a debt due to him from one of the parties to the contract is not 'properly' a stipulation pour autrui. It is for the exclusive benefit of the stipulating party."

On the inspiration of the same passage, and on the strength of Tiernan v. Martin, this court, speaking of the assumption of a city tax by a purchaser of real estate, in the case of People's Association v. Garland, 107 La. 476, 31 South. 892, said:

"In the absence of any text of law on the subject, such assumption cannot benefit the city unless it be viewed as a stipulation pour autrui in its favor. We find nothing tending to impress that character upon the act. The matter was one purely personal to the contracting parties, exclusively in their own interests, and not in the remotest degree intended for the benefit of the city, who was not a party to the contract. The assumption of the tax by another did not relieve the party assessed of his liability therefor. In contemplation of law, he remained the tax debtor. It merely gave him the right to recoup himself against his vendee in case he were compelled to pay the tax assumed by the latter, but conferred no rights on any one else. Thus it has been held that a stipulation that a certain sum shall be paid to a third person towards the extinguishment of a debt due to him from one of the parties to the contract is not a stipulation pour autrui, but that the assumption of the debt is part of the consideration or price of the property; intended exclusively for the benefit of the stipulating party. Tiernan v. Martin, 2 Rob. 523."

The doctrine inculcated by the foregoing cases is simply what is expressed by the Court of Cassation in the above-cited case of Watts-Ward c. Cels, as follows:

"If article 1121 of the Civil Code (Code Napoleon) permits a stipulation to be made in favor of a third person when such 'is the condition of the stipulation made for one's self, we must not conclude therefrom that any clause in a contract susceptible of procuring advantages to a third person brings into existence in favor of the latter a right of action directly against the contractor, when it has not been the intention of the parties to confer it upon him."

The court adds:

"It is simply a matter of the interpretation of the contract."

This suit is upon the second of the hereinabove mentioned stipulations; that is to say, it is upon the engagement of the defendant to supply the city with water for the use of her fire department.

It would seem to be perfectly plain that the engagement is distinctly in favor of the city in her corporate interest, and is not a stipulation pour autrui. An engagement to furnish water to the city is not an engagement to furnish water to the inhabitants individually. The inhabitants could neither demand its performance, nor demand the nullity of the contract because of its nonperformance. They could not pay any part of its consideration, for it is futile to say that payments made by the city out of her treasury are payments made by the inhabitants individually.

Though the stipulation is thus made by the city distinctly in her own favor, in the interest of one of the branches of her administration, and though the engagement is thus distinctly to the city for supplying her fire department with water, nevertheless plaintiffs contend that the stipulation is made in favor of the inhabitants individually, and that the engagement of the defendant company is to the inhabitants individually. All we can say is that the contention is in the teeth of the plain terms of the contract.

Counsel place much reliance upon the recital that the hydrants are said to be rented "In consideration of the public benefit and the protection to property resulting from the construction of said system of waterworks"; but the public benefit and the protection to property is necessarily the consideration of every contract entered into by the city in the interest of her fire department. The fire department itself has no other raison d'être. We fail entirely to see what comfort plaintiffs can derive from that recital. Counsel

say the property to be protected was that of the inhabitants. As a matter of course, it was. It was all the property within the corporate limits, public and private. But from the fact that the water was intended to be used by the city for the protection of the property of the inhabitants, it does not follow that the stipulation was intended to be in their favor individually, and to confer upon them a right of action. The contracts of the city with the firemen, by which the latter are to furnish their services in case of fire, are entered into for the public benefit and the protection of property; but these contracts are not stipulations pour autrui in favor of the inhabitants individually, and the latter have no action thereon. The municipal corporation is nothing more than a fictitious being created for the purpose of administering the affairs of the public, and necessarily all its contracts are for "the public benefit"; but it does not follow that they are all stipulations pour autrui in favor of the inhabitants individually, and that the latter may bring suit thereon.

By keeping well in mind the separateness between the juridical being, the corporation, and the inhabitants, its corporators, we can see very clearly that the engagement of the defendant company to furnish water for the extinguishment of fires is distinctly to the city, and that the only connection the inhabitants have therewith is that the city is to use the water to protect their property, and that in that way they have an interest in the performance of the contract. But as said by the Court of Cassation, supra, "we must not conclude that every clause susceptible of procuring advantages to a third person brings into existence in favor of the latter a right of action."

The materials and labor contracted for by the builder who is constructing a house for me under contract are intended to be used on my house for my benefit, but the contracts for this labor and these materials are not for that reason my contracts, and I have not an action thereon.

The essential point must always be as to whether there was the intention to confer a right of action. Counsel say that it was "not only the right, but the duty, of the corporation, in making such a contract, to embody provisions for the benefit of the inhabitants." If by this is meant that it was the duty of the city to see to it that the defendant company should be obligated to furnish water to the inhabitants individually, when so required, at a fixed maximum rate, for private use, including individual fire protection, we say the city has done that very thing. But if it is meant that it was the duty of the city to impose upon the defendant company the liability which the plaintiffs are here contending for, we answer emphatically that it was not. If the city herself owned the waterworks, she would not be under any such liability. Authorities cited at page 1248 of 52 La. Ann., and page 686, 27 South., in case of Planters' Oil Mill v. Monroe Waterworks Company; also Amer. & Eng. Ency. of Law, vol. 20, p. 1197. Why, then, should it be her duty to impose it upon the contractor stepping into her shoes for discharging her function of supplying her fire department with water?

Perhaps, if the city found a contractor so benevolent or simple as to be willing to assume such a liability without exacting additional pay for doing so, it might be her duty to take advantage of the situation and impose such a liability; but where would she find a contractor of that type? It goes without saying that no contractor would expose himself to a lawsuit in the wake of every fire, without exacting pay for so doing. And the pay would have to be very heavy, for the experience of every day teaches that the negligence of employés cannot be entirely guarded against, and at any moment, under such a liability, heavy damages might have to be paid. In fact, a general conflagration,

resulting from the negligence of an employé, might utterly bankrupt the contractor. It is entirely improbable that the city of Shreveport would have been willing to impose so heavy a burden upon her treasury.

Not only it was not the duty of the city to stipulate such a liability, but she was without authority to do it. She was authorized by her charter "to pass such by-laws and ordinances as are necessary and proper * * * to provide the means and make regulation for preventing and extinguishing conflagrations," but she was not authorized to indemnify the inhabitants against any losses that might result from a negligent fire service. And what she could not do directly she could not do indirectly. It not being permitted her to assume such a liability, she could not hire some one else to assume it in her place. Becker v. Waterworks Co., 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; Mott v. Manufacturing Co., 48 Kan. 12, 28 Pac. 989, 15 L. R. A. 375, 30 Am. St. Rep. 267; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 179, 28 L. R. A. 532.

In fact, it may not be so certain that the power of taxation, which can be exercised only for a public purpose, may be exercised for the purpose of paying indemnities to private individuals for the failure of the city to discharge one of her governmental functions. That this matter of extinguishing of fires is a governmental function is well settled. Authorities cited in case of Planters' Oilmill v. Monroe, 52 La. Ann. 1248, 27 South. 684. Of course, the function is not the less governmental if the city, instead of discharging it herself, hires some one else to do it; and, plainly, if the city cannot use the money derived from public taxation to pay those indemnities to private individuals, she cannot use it to hire some one to assume in her place and stead the risk of having to pay them. Under such an arrangement the indemnities would in the end come out of the public treasury, for the assumption of

the liability would have to be paid for, and the amount of the payment would have to be the equivalent of the risk. Plus, indeed, a margin of profit.

Lastly, counsel say that, if they cannot bring suit for the alleged breach of contract, no one can—for the city cannot—and the contract is without a sanction. The answer is that the sanction of this contract is found in the right of the city to enforce specific performance or to demand the nullity of the contract, and not in a suit in damages by persons not privy thereto. There is nothing anomalous or strange in the circumstance of there being losses resulting from a breach of contract, and yet no right of action in anybody's favor. Cases of that kind occur every day. To use again the illustration of a contract with a water company to protect from fire my neighbor's house, which is so close to mine as to endanger mine—in such a case neither my neighbor nor I can sue on the breach of the contract; he, because he was not a party; I, because I have suffered no loss. It makes no difference how direct and immediate the interest is. Thus in Loeber v. N. O. & C. R. Co., 41 La. Ann. 1151, 5 South. 60, the defendant street railroad company had agreed with the city, as part of the consideration of its franchise, to pave the street upon which the property of the plaintiff abutted, and had failed to do so, and the plaintiff brought suit to enforce performance of the contract. The court found that the contract did not contain a stipulation pour autrui. Said the court:

"Undoubtedly the stipulation of the contract sought to be enforced was consented to in the interest and for the benefit of the inhabitants of the city, but it does not follow that, if the corporation fails to enforce it, the taxpayer may."

In Barber Asphalt Co. v. R. Co., 49 La. Ann. 1608, 22 South. 955—another suit upon the same contract—the court held:

"The owners of property fronting on the parts of the street covered by the ordinance would

have had no shadow of right to control the action of the corporate authorities in this matter, and insist that the ordinance was irrepealable, inasmuch as by such repeal their interest would be seriously affected and injured by a repeal."

In Oliff v. City of Shreveport, 52 La. Ann. 1204, 27 South. 688, a bridge had been built in pursuance of a contract between the city of Shreveport and a railroad company, according to which the surplus earnings of the bridge in any one year should be applied towards reducing the rate of the tolls for the ensuing year. Citizens using this bridge, and having to pay the tolls, brought suit to enforce that stipulation of the contract. Held, that they had no right of action.

The sender of a letter or package through the mails does not have an action against the contractor for a breach of his contract with the government for carrying the mails. German State Bank v. Minn. R. R. (C. C.) 113 Fed. 414; Boston Ins. Co. v. Chicago R. R. (Iowa) 92 N. W. 88, 59 L. R. A. 796.

We conclude that the engagement of the defendant company to the city of Shreveport to furnish water to her for the use of her fire department was not a stipulation pour autrui.

We have discussed the case thus far as if the question it involves were res nova; but the exact question has been decided repeatedly in other jurisdictions, and once already by this court. Upon the latter decision— Planters' Oil Mill v. Monroe, 52 La. Ann. 1243, 27 South. 684—the plaintiffs place much reliance. But for the reasons hereinabove given, we are not satisfied with the conclusion there reached, and we have concluded to overrule it. By so doing we take this court from among a slender minority, and range it among the very large majority of the courts of the country which have had occasion to consider this question.

The decisions holding as we now do are the following: State Trust Co. v. City of Duluth, 70 Minn. 257, 73 N. W. 249; Boston Safe Deposit & Trust Co. v. Salem Water

Co. (C. C.) 94 Fed. 238; Davis v. Waterworks Co., 54 Iowa, 59, 6 N. W. 126, 37 Am. Rep. 185; Becker v. Waterworks Co., 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; Britton v. Waterworks Co., 81 Wis. 48, 51 N. W. 84, 29 Am. St. Rep. 856; Hayes v. City of Oshkosh, 33 Wis. 314, 14 Am. Rep. 760; Nickerson v. Hydraulic Co., 46 Conn. 24, 33 Am. Rep. 1; Eaton v. Waterworks Co., 37 Neb. 546, 56 N. W. 201, 21 L. R. A. 653, 40 Am. St. Rep. 510; Beck v. Water Co. (Pa.) 11 Atl. 300; Stone v. Water Co., 4 Pa. Dist. R. 431; Phœnix Ins. Co. v. Trenton Water Co., 42 Mo. App. 118; Howsman v. Water Co., 119 Mo. 304, 24 S. W. 784, 23 L. R. A. 146, 41 Am. St. Rep. 654; Fitch v. Water Co. (Ind. Sup.) 37 N. E. 982, 47 Am. St. Rep. 258; Foster v. Water Co., 3 Lea, 42; Ferris v. Water Co., 16 Nev. 44, 40 Am. Rep. 485; Fowler v. Water Co., 83 Ga. 219, 9 S. E. 673, 20 Am. St. Rep. 313; Mott v. Manufacturing Co., 48 Kan. 12, 28 Pac. 989, 15 L. R. A. 375, 30 Am. St. Rep. 267; Bush v. Water Co. (Idaho) 43 Pac. 69; Wainwright v. Water Co. (Sup.) 28 N. Y. Supp. 987; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 179, 28 L. R. A. 532; Waterworks Co. v. Brownless, 10 Ohio Cir. Ct. R. 620; Town of Ukiah v. Ukiah Water & Improvement Co. (Cal.) 75 Pac. 773, 64 L. R. A. 231; Wilkinson v. Heat, Light & Water Co. (Miss.) 28 South. 877; Metropolitan Trust Co. v. Topeka Water Co. (lately decided at Kansas City by Judge Pollock, U. S. District Judge) 132 Fed. 702.

Those holding the contrary view are the following: Paducah Lumber Co. v. Paducah Water Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536; Duncan v. Owensboro Water Co. (Ky.) 15 S. W. 523; Graves Co. Water Co. v. Ligon (Ky.) 66 S. W. 725; Gorrell v. Greensboro Water Supply Co. (N. C.) 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598.

These opposing decisions have been virtually criticised in the foregoing pages. They are based upon the supposed agency of the

municipality, and upon the fact of the contract having been entered into for the benefit of the inhabitants. Further analysis or discussion of them would serve no useful purpose. Criticism of them will be found in the following cases hereinabove cited: Mott v. Manufacturing Co.; Britton v. Waterworks Co.; Fitch v. Water Co.; Howsman v. Water Co.; House v. Waterworks Co.; Waterworks Co. v. Brownless; Eaton v. Waterworks Co.; Bush v. Water Co.; Boston, etc., v. Salem Water Co.; and Ukiah v. Ukiah Water Co. In general terms, it may be said of them that they obliterate the line of demarcation between the corporators and corporation, identify the individual with the public, consecrate the anomaly of a commutative contract emancipated from mutuality of obligation, and finally impose by implication a liability which, if intended by the parties to be a part of their contract, would most indubitably have been made the subject of an express clause.

Plaintiffs' learned counsel say that the majority decisions are based on the absence at common law of the stipulation pour autrui. It may be that the cases of Mott v. Cherryvale Water Company, 48 Kan. 12, 28 Pac. 989, 15 L. R. A. 375, 30 Am. St. Rep. 267; Howsman v. Trenton Water Company, 119 Mo. 304, 24 S. W. 784, 23 L. R. A. 146, 41 Am. St. Rep. 654; Becker v. Keokuk Water Company, 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; Bush v. Artesian Water Company (Idaho) 43 Pac. 70; Fowler v. Athens

Water Company, 83 Ga. 219, 9 S. E. 673, 20 Am. St. Rep. 313; Foster v. Lookout Water Company, 3 Lea (Tenn.) 42; Atkinson v. Newcastle Water Company, L. R. 2 Ex. Div. 441 —may to some extent be distinguished on that score, but not the others. In the very case of Gorrell v. Greensboro Water Supply Company, upon which the learned counsel mostly rely, the court said:

"One not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach. This has been sustained by many decisions elsewhere. And even when the beneficiary is only one of a class of persons, if the class is sufficiently designated."

See, also, A. & E. Ency. vol. 7, p. 106:

"The doctrine that a third person for whose benefit a contract is made may sue upon it is adopted in most of the United States, and is frequently referred to, therefore, as the 'American doctrine.'"

It is well to note that this suit is distinctly ex contractu, upon the contract of the city with the defendant company, and not ex delicto, upon the breach of any general duty to society, or any duty specially imposed by statute. To the failure to observe that important distinction the error into which the court fell in the City of Monroe Case is in great part attributable.

The judgment appealed from is set aside, and the suit of plaintiffs is dismissed, at their costs.

LAND, J., recused, having sat in the case below.