# LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**18-99**

**J. BOONE DEVELOPMENT, LLC**

**VERSUS**

**MILTON WATER SYSTEM, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-4422
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Steven J. Dupuis
Law Office of Steven J. Dupuis
P. O. Box 4425
Lafayette, LA 70502-4425
Telephone: (337) 233-6070
COUNSEL FOR:
    Plaintiff/Appellant – J. Boone Development, LLC

Carroll Lee Spell, Jr.
P. O. Box 249
Milton, LA 70558
Telephone: (337) 857-9772
COUNSEL FOR:
    Defendant/Appellee – Milton Water System, Inc.

**Michael Dean Hebert**
**Katherine E. Currie**
**Becker & Hebert, LLC**
**201 Rue Beauregard**
**Lafayette, LA 70508**
**Telephone: (337) 233-1987**
**COUNSEL FOR:**
    **Defendant/Appellee – Lafayette Parish Consolidated Government**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, LLC**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**Telephone: (337) 289-6906**
**COUNSEL FOR:**
    **Defendant/Appellee – William Theriot, Councilman of Lafayette City-Parish Consolidated Government**

**THIBODEAUX, Chief Judge.**

Plaintiff, J. Boone Development, LLC (Boone), brought suit against Milton Water System, Inc. (MWS), Lafayette City-Parish Consolidated Government (LCG), and William Theriot (Theriot), alleging multiple causes of action in response to a dispute involving a Wholesale Water Agreement between LCG and MWS. LCG filed its peremptory exception of no cause of action or, in the alternative, no right of action. Boone subsequently amended its petition to further allege its causes of action against LCG, prompting LCG to amend its exception in response thereto. After a hearing, the trial court granted the exception, dismissing Boone's claims against LCG with prejudice. Reviewing the petitions and exhibits incorporated therein, we find no error in the trial court's judgment and affirm the dismissal with prejudice accordingly.

I.

## ISSUES

Boone entreats us to consider:

(1)   whether the trial court committed legal error in granting LCG's Peremptory Exceptions of No Cause of Action or, in the Alternative, No Right of Action;

(2)   whether the trial court committed legal error when it granted LCG's Peremptory Exceptions of No Cause of Action or, in the Alternative, No Right of Action denying Boone leave to amend its Petition; and

(3)   whether the trial court committed legal error when it denied Boone's Motion for Continuance of the Hearing on LCG's Peremptory Exceptions of No Cause of Action or, in the Alternative, No Right of Action?

## FACTS AND PROCEDURAL HISTORY

Despite the voluminous and verbose petitions, the facts herein are rather straightforward as they relate to LCG. In 2014, Boone purchased approximately 42.35 acres of land in unincorporated Lafayette Parish to develop a residential community, consisting of approximately 172 lots, known as the San Sebastian subdivision (subdivision). Boone contracted with MWS to supply water to the subdivision. As per a 1997 Wholesale Water Agreement, LCG, through the Lafayette Utility System (LUS), supplied wholesale water to MWS.

In October 2014, MWS sent correspondence to LUS advising that MWS may need to request additional water volume from LUS because of a number of proposed developments, including the subdivision. LUS replied that it would need to make a major upgrade to its system in the area to accommodate the request.

On March 13, 2017, LUS sent an invoice to MWS in the amount of $125,781.25, representing the pro-rata share of the future additional capital costs LCG would incur in upgrades to infrastructure necessitated by the development of the subdivision.[1] This rate setting method, called "customer contribution in aid of construction," was utilized in accordance with Lafayette Parish Utility Authority (LPUA) Ordinance No. O-003-2015. MWS then sent a follow-up letter to LUS, revising its estimate to reflect that its actual need for water was less than it had anticipated due to the slowing of developments and repairs of several leaks. It also advised LUS that there would be no need for substantial infrastructure

---

[1]This same amount of $125,781.25 attributable to the subdivision was recited in a letter from LUS to MWS, dated January 15, 2015. In that letter, LUS stated that it had advised Boone of the pro-rata cost described above on December 24, 2014.

improvements in the foreseeable future. LUS did not, however, withdraw or rescind its invoice. MWS then demanded payment of the invoice by Boone before it would supply water to the subdivision. Boone made the payment by issuing a two-party check to MWS and LCG/LUS, with the notation "PAYMENT UNDER PROTEST WITH A FULL RESERVATION OF RIGHTS."

Boone then filed the present suit against MWS and LCG, alleging tortious conduct and contractual breaches on the part of LCG and MWS, which allegedly caused serious damage to Boone. Also named a defendant was Theriot, who was (1) the president, a board member, and a manager of MWS, (2) an LCG council member, and (3) the developer of property adjacent to the subdivision. Boone alleged in his petition that Theriot required Boone to unnecessarily relocate and move its sewerage system, which occasioned Boone to incur substantial additional cost. These actions allegedly imposed upon Boone "unnecessary and unreasonable delays which cost Plaintiff a substantial amount of additional 'interest carry' on its construction loan." The petition further sought a declaration that the LPUA ordinance was unconstitutional and was intentionally, deceptively, and maliciously used by LCG against Boone in the unconstitutional taking of Boone's cash, property, and property rights.

In response, LCG filed its exception of no cause of action or, in the alternative, no right of action. Boone first sought a continuance of the hearing on the exception. After the trial court denied its motion, Boone amended its petition to further state its causes of action against LCG and expand upon its efforts to assign responsibility to LCG for omissions or actions allegedly taken by MWS and/or Theriot. Consequently, LCG amended its exception, objecting that the

3

amended petition "failed to cure the deficiencies asserted in [the] original [e]xception[.]"

After hearing the exception, the trial court ruled in favor of LCG, reasoning:

> In this case LCG and MWS have a contract between one another for the wholesale of water. There is no contract between LCG and J. Boone Development, LLC for the supply of water to the San Sebastian Subdivision. Upon the request of MWS for increased water demand, LCG sent an invoice to MWS. MWS demanded that J. Boone Development pay this invoice. This court does not find a contractual relationship between J. Boone Development, LLC and LCG. The way in which MWS chooses to pass on these additional cost[s] to update or make their system greater to meet the needs of their increased custom[er] base, is up to them. The fact that J. Boone Development, LLC paid the invoice and took it upon themselves to issue a two-party check to MWS and LCG does not create a contract between LCG and J. Boone Development, LLC. As a result of there being no contractual relationship between J. Boone Development, LLC and LCG, this court finds that plaintiff does not have a cause or a right of action against LCG at this time.

The trial court granted the exception, dismissing Boone's claims against LCG with prejudice.[2]

III.

## STANDARD OF REVIEW

An appellate court reviews a trial court's ruling sustaining an exception of no cause of action de novo. *City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.*, 93-690 (La. 7/5/94), 640 So.2d 237.

---

[2]LCG also moved for summary judgment, which the trial court's ruling rendered moot.

IV.

**LAW AND DISCUSSION**

In ruling on an exception of no cause of action, our supreme court in

*Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 118-19

(citations omitted), provided the following guidance:

> A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert an exception of no cause of action. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.

> Louisiana has chosen a system of fact pleading. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action.

> The burden of demonstrating that the petition states no cause of action is upon the mover. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief.

When ruling on the exception, courts may also "consider exhibits

attached to the petition in determining whether the law extends a remedy to the

plaintiff under the factual allegations of the petition." *Bogues v. La. Energy*

*Consultants, Inc.*, 46,434, pp. 3-4 (La.App. 2 Cir. 8/10/11), 71 So.3d 1128, 1131.

5

We are, therefore, tasked with reviewing the petitions and the exhibits attached thereto in a light most favorable to the plaintiff and resolving every doubt in its favor to determine whether the petitions state any valid cause of action for relief against LCG. Having undertaken this task, we, as did the trial court, find no valid cause of action has been pled against LCG.

Through its lengthy and multitudinous petitions, Boone attempts to set forth various causes of action against LCG and advance constitutional claims. However, Boone, in all its allegations, fails to establish a factual connection between any action taken by LCG and the damages or takings Boone allegedly sustained. The only actions alleged to have caused damage were taken by MWS or Theriot, not LCG.

Both the petitions and the attached exhibits, most specifically the invoice, definitively show that Boone was never indebted to LCG. LCG never sought payment of the invoice from Boone and never supplied or failed to supply water to the subdivision. Rather and most significantly, it was MWS that demanded payment by Boone and refused to provide water in the absence thereof. Issuing the payment to both MWS and LCG, even if done under protest, does not, unilaterally or retroactively, create any indebtedness on the part of Boone to LCG for the invoiced amount. Under the facts alleged, LCG had and still has no right to proceed against Boone for the payment of the invoice as well as no obligation to supply water to the subdivision.

Boone also endeavors to expose an alleged agency relationship between LCG and the two other defendants, MWS and Theriot. But the simple statements that MWS contracted with LCG for the supplying of wholesale water

and that Theriot was a LCG council member are not factually or legally sufficient to impute any alleged actions taken by either co-defendant to LCG.

As to the alleged actions of MWS and Theriot, Boone merely advances legal theories of agency and respondeat superior, but he has not pled sufficient facts "for a court to find that those facts, if proven, demonstrate that a legal duty is owed by one party to another." *Johnson v. Orleans Par. Sch. Bd.*, 05-796, p. 5 (La.App. 4 Cir. 3/22/06), 929 So.2d 761, 764. Merely alleging legal conclusions will not be enough to withstand an exception of no cause of action without a sufficient factual basis.

Even accepting all the allegations as true and resolving any doubt in Boone's favor, we can find no factual basis in these petitions sufficient to demonstrate the legal theories advanced therein against LCG based on the alleged actions taken by its wholesale customer, MWS, and its council member, Theriot. Simply put, the facts alleged do not sufficiently show how the status of MWS as LCG's customer and Theriot as LCG's council member have anything to do with the alleged omissions or acts taken by these co-defendants or how those same acts and omissions would somehow bind LCG either under an express mandate or an implied one.

Under our law of mandate, "[a]n agent is one who acts for or in place of another by authority from the latter. An agency relationship may be created by express appointment of a mandatary under LSA-C.C. Art. 2985 or by implied appointment arising from apparent authority in order to protect innocent third parties." *Oliver v. Cent. Bank*, 26,932, p. 8 (La.App. 2 Cir. 5/10/95), 658 So.2d 1316, 1321, *writ denied*, 95-1469 (La. 9/22/95), 660 So.2d 477 (citations omitted);

*see also* La.Civ.Code arts. 2985 and 3021.[3] "In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person." *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La.1989). The facts in Boone's petitions, however, fail to allege any manifestations made by LCG to the effect that either MWS or Theriot had authority to act for LCG, thus precluding a finding of agency or mandate under the facts alleged herein.[4]

Moreover, the contracts clearly show that no contractual relationship existed between LCG and Boone. As has long been held,

> A person can become a party to a contract in only one of two ways: First, by entering into it himself, either directly or through an agent; or, secondly, by accepting a stipulation made in his favor by the contractants, he remaining a third person and stranger to it until by accepting the stipulation he becomes a party. Such a stipulation is called in the civil law a "stipulation pour autrui"; "autrui" meaning some one else, or a third person; that is to say, a person not party to the contract.

*Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.*, 113 La. 1091, 1094-95, 37 So. 980, 982 (1905).

LCG contracted with MWS "to provide a ready supply of potable water on a wholesale basis to MWS . . . for resale to its retail and wholesale customers[.]" MWS, in turn, contracted with Boone to supply water to the

---

[3]The Civil Code article referred to in the quoted language has since been revised and re-numerated in La.Civ.Code art. 2989. Our jurisprudential rules of implied appointment and apparent authority are now codified in La.Civ.Code art. 3021.

[4]"[I]n order to state a cause of action under the doctrine of responde[a]t superior, the petitioner must allege the existence of an employer-employee relationship, that there was negligence on the part of the employee and that the tortious acts of the employee were committed in the course and scope of the employment." *Moreau v. Landry*, 305 So.2d 671, 672 (La.App. 1 Cir. 1974); *see also* La.Civ.Code art. 2320. Although such a relationship may allegedly exist between MWS and Theriot, no employer-employee or master-servant relationship has been sufficiently alleged between LCG and either MWS or Theriot, warranting no further discussion by this court.

subdivision. As the contracts show, Boone is not a party to the contract between LCG and MWS.

Moreover, although Boone alleges it is a third-party beneficiary to the contract between LCG and MWS because it is a customer of MWS, its allegations are again merely conclusions which the contracts on their faces do not support. Three criteria must be met to provide a benefit for a third party: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 05-2364, pp. 8-9 (La. 10/15/06), 939 So.2d 1206, 1212. None of the three requirements are evident from the face of the contracts. There is no manifestly clear intention to benefit the developer of the subdivision. Rather, the alleged facts and actions taken by LUS clearly demonstrate that the anticipated retail customers, who prompted the need for the infrastructure upgrade and corresponding invoice at the heart of this matter, are the future residents of the 172 lots, not the developer. With no benefit, it logically follows there is no certainty, and any "benefit" Boone may derive from the contract would strictly be incidental thereto.

Accordingly, we find that the facts alleged and the contracts incorporated into the petitions do not demonstrate any contractual obligations owed by LCG to Boone under any theory advanced by Boone. More importantly, though, we further find the petitions fail to allege facts sufficient to (1) connect any alleged actions taken by LCG to the damages or takings allegedly sustained by Boone, or (2) bind LCG for the alleged omissions or actions taken by MWS and/or Theriot. Having examined the petition and the amended petition in their entirety, we find no error in the trial court's ruling sustaining the exception of no cause of

9

action.  Despite the valiant efforts of creative phraseology and the volume of verbiage used by Boone, the assertions in the petition and its attachments simply do not talismanically transform themselves into any actionable claim.

Louisiana Code of Civil Procedure Article 934 provides:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.  If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

Although Boone challenges the trial court's refusal to allow further amendment to the petition, we note that Boone has already filed an eighty-two-page amended petition to his original sixty-two-page petition and yet has still failed to plead sufficient facts to state a cause of action against LCG.  We find, therefore, that "the grounds of the objection raised through the exception cannot be . . . removed" by further amendment and affirm the trial court's dismissal with prejudice.  La.Code Civ.P. art. 934.

V.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court sustaining LCG's exception of no cause of action and dismissing Boone's claims against LCG with prejudice is affirmed.

Costs of this appeal are assessed to the Appellant, J. Boone Development, LLC.

**AFFIRMED.**