[Civ. No. 19558.   First Dist., Div. Two.   Oct. 17, 1961.]

J. A. RAGGHIANTI, Appellant, v. MARVIN SHERWIN, Respondent.

Orlando J. Bowman and Edmund L. Regalia for Appellant.

Crozier C. Culp for Respondent.

SHOEMAKER, J.—This is an appeal by plaintiff J. A. Ragghianti from a judgment for defendant Marvin Sherwin, entered on defendant's motion for summary judgment.

Plaintiff brought this action to recover a $15,000 payment allegedly made by him at the request of and on behalf of defendant. The record shows that on May 8, 1950, the parties had entered into a written agreement whereby plaintiff agreed to sell certain real property to defendant and one T. R. Bechtel; that pursuant to this agreement plaintiff was required, at his own expense, to prepare and record a subdivision map of the property, and was obligated to comply with certain requirements of the Contra Costa County planning commission; that defendant and Bechtel were required to construct dwelling houses on the property and to pay plaintiff $238,000; that plaintiff and his wife entered into a written agreement with Contra Costa County on March 16, 1950, whereby they agreed to cause to be constructed and to pay for street improvements and tract drainage, and in connection therewith plaintiff and his wife posted a bond for faithful performance; that the streets were completed in February of 1951, and although demand for payment was made upon defendant and Bechtel by the street contractor, both failed to make payment and the contractor thereupon brought an action against

plaintiff and others. The court held that the contractor had a valid lien on the subdivision for his street work, whereupon the title insurance company paid off the contractor, took an assignment of his claim, and proceeded against Ragghianti, who shortly before trial in that action paid the $15,000 demanded as he believed himself liable because of the bond he had given the county, and he likewise took an assignment of the said claim and the present action followed.

Defendant subsequently moved for summary judgment, basing his motion upon dual grounds—that the statute of limitations had run on appellant's cause of action, and that the payments made by appellant to the builder's assignee were voluntary and, as such, gave him no right of reimbursement against defendant. Plaintiff filed an affidavit in opposition to defendant's motion for summary judgment.

Since respondent's motion for summary judgment was based upon two grounds, and since the trial court granted judgment for defendant without specifying the ground upon which its decision was based, the question to be resolved on this appeal is whether the granting of summary judgment was proper on either of the grounds urged by respondent.

We are satisfied that respondent properly contends that the payment made by appellant to the contractor's assignee was voluntary and therefore furnishes him no right to reimbursement against respondent. A reading of appellant's (amended) complaint and his affidavit in opposition to respondent's motion for summary judgment clearly discloses that appellant based his right to reimbursement solely on the theory that he filed a bond with the county at respondent's request and that he was thus entitled to recover from respondent any payments made under this bond on respondent's implied promise of indemnity. No attempt was made by appellant to base his cause of action on any other theory, and no request for leave to further amend his complaint was ever made.

The surety bond filed by appellant was given to the county of Contra Costa in connection with a contemporaneous agreement whereby appellant and his wife agreed to complete road and street improvements and tract drainage in accordance with the applicable county ordinances. Pursuant to this agreement with the county, appellant and his wife agreed to furnish a faithful performance bond or cash deposit to cover the estimated cost of the contemplated improvements. Upon acceptance by the county of any portion of the road work, a

partial withdrawal of the deposit in money or bonds was to be allowed upon certificate of the county surveyor. Pursuant to this agreement, appellant and his wife accordingly executed a surety bond to the county whereby they agreed to complete the contemplated improvements within one year. The bond also provided that it was to become null and void if the improvements were duly completed in accordance with the terms of the contract. Nowhere in the bond or in the contemporaneous agreement with the county did appellant or his wife ever agree to incur liability to any party other than the county of Contra Costa.

The bond and agreement executed by appellant and his wife were clearly those set forth under the Subdivision Map Act. (See Bus. & Prof. Code, §§ 11500 and 11628.) Section 11612 of this act provides as follows:

"In the event an agreement for the improvement of the streets or easements is entered into, the governing body may require that the agreement shall be secured by a good and sufficient bond, or it may accept, in lieu thereof, a cash deposit, which bond or cash deposit shall be in an amount not in excess of the estimated cost of the improvement. . . . Any such agreement or contract shall by its terms provide for the acceptance of the work as it progresses and for partial withdrawal of the deposit, in money or bonds, upon certificate of the county surveyor or the city engineer, or other public official or employee authorized to perform such function, in a manner similar to cash payments under cash contracts and under rules established by the governing body."

It is appellant's position, however, that a bond given to the county under the Subdivision Map Act runs not only in favor of the county but also in favor of contractors, laborers and materialmen who perform work and supply materials in performance of the project for which the bond is given as security. Appellant ignores the fact that this precise issue has already been before the courts and has been determined adversely to his position.

In *Evola* v. *Wendt Constr. Co.* (1959), 170 Cal.App.2d 21 [338 P.2d 498], an owner and subdivider of land, in order to comply with the Subdivision Map Act, gave to the county of Contra Costa a corporate surety bond "to guarantee full payment of the cost of all required improvements." The subdivider had hired a contractor to put in the improvements guaranteed by the bond, and the contractor brought suit on the bond to obtain payment for constructing the paving, curb,

gutters, and tract drainage in the proposed subdivision. The surety bond given by the subdivider, just as in the case at bar, named the county only as the obligee. The plaintiff contractor nevertheless argued that the bond ran in favor of labor and materials claimants. The court rejected this contention and stated:

". . . [W]e think the most cursory reading of the sections of the Subdivision Map Act makes it plain that the purpose of the Legislature in enacting section 11612 of the act was to protect counties, cities, and the public; it was not to protect suppliers of labor and materials. Undoubtedly, the Legislature had in mind that, as it is the duty of a city or county which has accepted a dedication of streets, alleys and the like to maintain them, that it should be entitled to demand a bond guaranteeing that the work of improvement would be done by the subdivider, where it had not been completed. . . ." (P. 25.)

The court accordingly affirmed the judgment for defendants which had been entered after the lower court sustained a demurrer to the complaint without leave to amend.

In *Morro Palisades Co.* v. *Hartford Accident & Indemnity Co.* (1959), 52 Cal.2d 397 [340 P.2d 628], a subdivider had given to the county of San Luis Obispo a similar bond to insure faithful performance of an agreement to improve the streets and roads in the subdivision tract. The county then assigned the bond to an owner of land in the tract, who brought suit on the bond to recover for the subdivider's failure to complete the road work. The California Supreme Court affirmed the judgment of dismissal, holding that the county had no power to convey such a bond, which was for the benefit of the county rather than the owner of the land affected by the default. In so holding, the court made reference to the *Evola* case as authority for the proposition that the right to recover under the bond belonged only to the county (p. 401).

In view of these cases, the bond executed by appellant to insure faithful performance of his contract with the county cannot be interpreted so as to run in favor of laborers or materialmen, and appellant was not obligated under the bond to make any payments to the assignee of Clements & Co. for work done by them in constructing the subdivision improvements. Under the terms of the bond and the contemporaneous agreement, appellant was bound to the county alone, and his payments in settlement of the subcontractor's claim were not made under any legal compulsion but as a mere volunteer.

Appellant argues, however, that the *Evola* decision was not rendered until 1959 and that his payment of $15,000 was made on March 26, 1956. It is therefore appellant's position that the law at the time of appellant's payment to the title company established that the surety bond ran in favor of laborers and materialmen. In support of this contention, appellant relies upon a 1955 Contra Costa County Superior Court action (*Clements* v. *Bechtel*, No. 53509), which appellant asserts involved an identical contract and identical bond as those in the case at bar. Appellant asserts that the trial judge in this prior case determined that the obligors on the bond were liable to the street contractors and urges that the existence of this prior trial court decision is sufficient to show that the law at that time compelled appellant's payment. Appellant contends that, in any event, the existence of the *Bechtel* decision is evidence that appellant made his payment to the title company under the good faith belief that he was legally liable for this debt and that he cannot, therefore, be viewed as a volunteer.

It would seem clear that the existence of a single superior court decision cannot be considered to establish any rule of law. Even if the evidence before two trial courts is identical on a particular point, the second trial judge is not required to make the same determination as was made by the first trial judge. (See *Hagan* v. *Fairfield* (1960), 183 Cal.App.2d 703 [7 Cal.Rptr. 248, 250-251].) Even had the decision relied upon by appellant been that of an appellate court, under traditional theory an overruled decision is considered not to have established bad law, but merely to have misstated the law. The overruling decision will be deemed to have stated what the law was from the beginning, and will therefore be given retroactive effect. (See *Forster Shipbuilding Co.* v. *County of Los Angeles* (1960), 54 Cal.2d 450, 458-459 [6 Cal. Rptr. 24, 353 P.2d 736].)

In connection with this phase of the appeal, we would reiterate that the surety bond and contract named no other obligee than the county, and also the *Evola* opinion, in which the court stated that "the most cursory reading" of the Subdivision Map Act made it plain that section 11612 was intended to protect the county rather than labor and material suppliers.

Appellant cites several cases from other jurisdictions as authority for the proposition that one who makes a payment under the belief that he is bound is not a volunteer. It would

appear to be the rule, however, that such a belief in liability must be founded upon a more substantial basis than a single trial court decision. In any event, the California cases have required more than a mere good faith belief in liability.

It is true, as contended by appellant, that a surety may be entitled to reimbursement by his principal whether or not the surety's payment on behalf of his principal was compelled by actual legal proceedings. (See Civ. Code, § 2847.) Where such a payment is made without submitting to suit, however, reimbursement will be allowed only where it can be shown that liability was clearly established and that the suit would have been a mere formality. In *Carpenter Paper Co.* v. *Kellogg* (1952), 114 Cal.App.2d 640 [251 P.2d 40], the court stated:

". . . While . . . an indemnitee is not bound to submit to suit before paying the claim, if he pays without such suit, he is under the necessity, as a condition of recovery from his indemnitor, of proving that he was liable for the amount thus paid. (13 Cal.Jur., p. 993, § 13; 42 C.J.S., p. 603, § 25; p. 625, § 35.)" (P. 651.)

In the case at bar, there was certainly no established authority to the effect that the bond given by appellant ran in favor of materialmen or laborers. Appellant chose to pay the claim of the title company and must now be viewed as a volunteer and as such entitled to no reimbursement from respondent.

Appellant further contends that his complaint and affidavit contained sufficient facts to support a finding that respondent and appellant were partners in a joint venture and as such should be jointly liable for debts incurred while completing the subdivision project. The facts in the case at bar are not only insufficient to support such a finding but are clearly inconsistent with the existence of such a relationship between the parties. The transaction in which appellant and respondent were involved was simply a sale of real property.

In order for there to be a joint venture, there must exist between the parties a mutual right to control the management or operation of the enterprise and a common purpose in which all parties have a mutual interest. (See Prosser, Torts [2d ed.], § 65, p. 363.) In the instant case, the contract between the parties reveals that appellant had no right whatever to control the operation of the enterprise. Appellant clearly would not have been entitled to object to the type of homes built by respondent, to the manner in which they were

sold, or to any other detail of the operation. There is also no indication of any common purpose as between the parties. Appellant's sole purpose was to sell the real property and to obtain a specified purchase price in return. Although respondent was entitled to pay appellant by means of proceeds obtained from sales of individual houses in the subdivision, this involved no element of risk on appellant's part, since the contract expressly provided that appellant was to receive the full purchase price on a specific date regardless of whether respondent had sold a sufficient number of homes to cover this amount. Under these circumstances, there was no evidence whatever upon which to base a finding that appellant and respondent were partners in a joint venture.

Inasmuch as the foregoing decision completely disposes of the matter before us, it is unnecessary to consider the contention of respondent that the appellant's cause of action is barred by the statute of limitations.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied November 16, 1961, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1961. Schauer, J., Peters, J., and White, J., were of the opinion that the petition should be granted.