174 So.2d 634

**Mrs. Talita B. COX**

v.

**W. R. ALDRICH AND COMPANY, Inc.**

No. 47183.

Dec. 14, 1964.

Dissenting Opinion Dec. 22, 1964.

On Rehearing May 3, 1965.

Simon & Trice, Phil Trice, Lafayette, for plaintiff-relator.

Boris F. Navratil, of Breazeale, Sachse & Wilson, George W. Lester, Baton Rouge, for defendants-respondents.

McCALEB, Justice.

Certiorari was granted herein to review a decision by the Court of Appeal, First Circuit, which affirmed the district court's judgment dismissing plaintiff's claim for damages against W. R. Aldrich and Company for $8,000 plus $65 per month from 1956 until full restitution is made, as the consequence of an alleged breach of a stipulation in her favor contained in a contract between defendant and the State, through the Department of Highways.

We find the salient facts of the case to be as follows: Plaintiff is the owner of certain property (the East half of Lots Nos. 8 and 9 of Square 106 of the Sokoloski Addition to Abbeville) located at the intersection of Charity Street and Gertrude Avenue in Abbeville, Louisiana, which has a frontage of 60 feet on the South line of Charity Street by a depth of 100 feet along the West side of Gertrude Street. There is a frame building located on Lot 8 owned by plaintiff which was formerly used as a filling station and garage and had two gasoline pumps situated in the front thereof near the South curb line of Charity Street with a canopy extending from the building to the gasoline pumps. Plaintiff's residence is located on the East half of Lot 9 and is situated immediately in the rear of the filling station and garage. Before 1956, the portion of Charity Street devoted to vehicular traffic was 40 feet in width and formed part of State Highway 14. During 1955 the Department of Highways planned the improvement of State Highways 14 & 82 and, to this end, it let a contract to defendant in 1956 to furnish the labor and material necessary to construct State project Nos. 194–07–15 & 55–06–13 for $451,180.67. This contract, among other things, contemplated the widening of the vehicular portion of Charity Street from 40 to 70 feet. In connection with the preparation of the plans and specifications for this work, the Department sent its agent, a Mr. McGee Moss, to contact the property owners along the route of the proposed project to secure grants of rights-of-way wherever necessary. During the negotiations with plaintiff, it was determined that the widening of Charity Street would place the South line of the street within four or five feet in the front of plaintiff's garage and she requested that, in order to allow her more room between the front of her building and the street, the Department cut ten feet off the front of the building and add it to the rear thereof. Mr. Moss agreed to this request and plaintiff signed the grant of right-of-way on May 3, 1956.

In the contract, which was later let to defendant company by the Highway Department, the only reference to plaintiff's property is found under Item 5–28–1, entitled "Removal and Relocation of Buildings

and Miscellaneous Structures". Under this heading among other references, the particular reference to plaintiff's property reads as follows:

"STATION: 47 + 25; DESCRIPTION: Alter Garage; SIDE of C/L: RT.; SIZE 58 feet; ITEM 5–28–1 AMOUNT: $2,000.00".

And a footnote under Item 5–28–1 specifies that the alterations indicated on the plans are to be as directed by the State Highway Engineer; that any new materials required for the alterations were to be furnished by the contractor and that such costs were to be included in the respective unit prices bid ($2,000 as to the particular alteration here involved) and no additional payment would be made therefor.

When the work under the contract had progressed to a point near the property of plaintiff, certain employees of defendant called on plaintiff and advised her that they were ready to proceed with the alteration of her garage. However, it appears that a dispute arose as to the nature and extent of the alteration, plaintiff contending that, in keeping with her understanding of the agreement she had with Mr. Moss of the Highway Department, she was entitled to have certain specified work performed and defendant's employees insisting that defendant would comply only with the specifications of its road building contract with the Highway Department. As a result, plain-tiff refused to permit performance of the alteration contemplated by defendant and also refused to accept $2,000 offered her by defendant, representing the amount of its bid for the work to be done at Station 47 + 25 under its contract with the Highway Department. In these circumstances, the defendant reported the matter to the Department of Highways and the latter, being desirous of having the project completed at an early date, instructed defendant to delete the particular item in the construction contract pertaining to plaintiff's property and proceed with the work. This was done.

In September of 1958, plaintiff filed the instant suit against Aldrich and Company for the above alleged damages for failure to make the alteration to her garage building, allegedly, as provided in the contract. The latter resisted the demand and, thereafter, impleaded the Department of Highways as third party defendant.

Aldrich Company contends, first, that plaintiff has no cause of action since the provision, anent Station 47 + 25, in its contract with the Department of Highways is not a stipulation pour autrui; that, moreover, even if it be held otherwise, plaintiff is not entitled to recover because she never accepted the stipulation in the contract and that, at all events, none of her property is within the 70-foot right-of-way of Charity Street.

The district judge upheld defendant's last two contentions and his opinion was adopted by the Court of Appeal. See Cox v. W. R. Aldrich and Company, 162 So.2d 18.

After a review of the record, we think the factual conclusions reached by the district judge are amply supported by preponderating evidence. However, it is not essential that our decision rest on a factual basis for it is clear, as we shall hereinafter demonstrate, that the contractual provision on which plaintiff must necessarily bottom her cause of action is not a stipulation pour autrui within the contemplation of Article 1890 of our Civil Code. The Article reads:

> "A person may also, in his own name, *make some advantage for a third person the condition or consideration of a commutative contract,* or onerous donation; and if such third person consents to avail himself *of the advantage stipulated in his favor,* the contract can not be revoked." (Italics ours)

This Article is to be considered in connection with Article 1902 of the Civil Code, dealing with the effect of obligations, which provides:

> "But a contract, *in which anything is stipulated for the benefit of a third person,* who has signified his assent to accept it, can not be revoked *as to the advantage stipulated in his favor* without his consent." (Italics ours).

It is the position of counsel for defendant company that the construction contract which defendant agreed to perform for the Department of Highways does not contain a benefit stipulated in favor of plaintiff and, consequently, as plaintiff is not a party to the contract, she has no right or cause of action against it.

The point is well taken. At the outset, it would seem from a literal reading of the two Articles of the Civil Code on which plaintiff's action is founded that they envision and apply only in cases in which the contract contains an express stipulation in favor of a third person. There·is nothing in the construction contract under which plaintiff sues to indicate that the work to be done by defendant at Station $47 + 25$ was for her benefit or even that the Highway Department had a contractual obligation to her of any sort.

Third party beneficiary obligations have a long history in the Civil Law. The articles of our Code stem from the French Civil Code (Art. 1121) which has been the subject of much discussion and varient views by commentators on the Roman and French law. See excellent review of the doctrine by Professor J. Denson Smith of Louisiana State University in 11 Tulane Law Review, 18–58. However, the needs of this case do not exact a detailed discussion of the different theories that have been advanced as to when, and the circumstances

under which, third party stipulations exist and will be enforced. Suffice here to say that, viewing plaintiff's case in its most favorable light, she has no cause of action against this defendant. For the well-settled jurisprudence requires that there be a *contractual intent* on the part of the parties to the agreement to establish a stipulation pour autrui, albeit such benefit in favor of a third party beneficiary may be implied from a consideration of the agreement as a whole, as well as by express stipulation.[1]

As above stated no such intention is apparent in the case at bar. Indeed, there is not the slightest indication in the contract that any part of the work to be performed by the defendant is for any person other than the Department of Highways. Compare Mallet v. Thibault, 212 La. 79, 31 So. 2d 601 and First State Bank v. Burton, 225 La. 537, 73 So.2d 453.

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

1. In Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L.R.A. 650 (1905), Mr. Justice Provosty, speaking for the court in disposing of defendant's contention that, under Article 35 of the Code of Practice of 1870 (which, incidentally, has been omitted from our present Code of Civil Procedure) there cannot be a stipulation pour autrui in the absence of express words to that effect in the contract, stated:
"We do not agree entirely with that view, for we do not think that mere form is sacramental in the matter; and we agree with the learned counsel for plaintiffs that the question of stipula-

SANDERS, J., concurs in the result.

SUMMERS, Justice (dissenting).

The majority opinion is in reality predicated upon the narrow finding that there was no contractual intent on the part of the Department of Highways and the contractor, the parties to the agreement, to establish a stipulation pour autrui in plaintiff's favor.

The pertinent stipulation of the contract reads:

"STATION: $47 + 25$; Description: Alter Garage; SIDE of C/L: Rt.: SIZE 58 feet; ITEM 5–28–1 AMOUNT: $2,000.00"

The agreement between the Department and the contractor, in explanation of the foregoing stipulation, contained the following footnote:

tion pour autrui, vel non, *is a question of what was the intention of the parties*, and that that intention must be gathered, just as in the case of any other contract, from reading the contract, as a whole, in the light of the circumstances under which it was entered into. But inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention; and we do not agree with counsel for defendant to this extent—that the implication to overcome that presumption must be so strong as to amount practically to an express declaration." (Italics ours).

"To be altered as indicated on the plans and as directed by the engineer. Any new material required shall be furnished by the contractor and the cost of same shall be included in the respective unit prices bid under Item 5–28–1, as no additional payment will be made therefor."

Furthermore, a reference to a survey plat (Exhibit D–10), which is part of the plans and specifications of the project, which, in turn, are a part of the agreement, shows Mrs. Cox's property in detail, with the buildings located thereon and the following certificate of the surveyor in bold lettering:

"STATE OF LOUISIANA—DEPARTMENT OF HIGHWAYS
MAP SHOWING PROPERTY OF
MRS. TALITA B. COX
LOCATED IN SQUARE 106, BEING THE
EAST HALF OF LOTS 8 & 9 OF THE
SOUTHWEST CORNER OF THE INTERSECTION
OF CHARITY ST. & GERTRUDE AVE."

———◆———

The plans for the project (Exhibit P–1–B) further show the layout of the Cox property at station 47 + 25 and contain this notation: "Cut off 10′ on front of garage & add to rear."

All of the facts which I have recited are an integral part of the stipulation, which cannot be confined to the language quoted by the majority.

Hence what the stipulation quoted by the majority means, as I understand from the circumstances and the evidence, is this: "At Mrs. Cox's property (STATION: 47 +25): the following is a description of the work to be done (Description): Alter the garage located on the right side of the center line of the highway project by cutting off ten feet from the front and adding ten feet to the rear (Alter garage; SIDE of C/L: Rt;) ; the size of the building to be altered is 58 feet fronting on the highway (SIZE 58 feet). The estimated cost of the alteration is $2,000.00 which the Department of Highways agrees to pay. (ITEM 5–28–1 AMOUNT: $2,000.00)."

If the requirement that Mrs. Cox's garage be altered at an approximate cost of $2,000.-00 does not evidence an intention on the part of the Highway Department to confer an advantage upon her, I am at a loss to understand what was intended thereby.

The alteration of Mrs. Cox's garage was surely an advantage to someone; it was not to bring about a highway improvement, as it relates solely to the improvement of private property belonging to Mrs. Cox.

This was not an advantage to the Highway Department, except insofar as it was an effort to fulfill the Department's obligation resulting from its agreement with Mrs. Cox. Nor was it an advantage to the contractor. Of course, ordinarily the contractor would consider it beneficial in a business sense to obtain this additional work, but it would be absurd to argue that the intention of the Department in requiring this alteration was to benefit the contractor.[1] The only reasonable conclusion to reach from the facts, therefore, is that the real advantage to result from the alteration of the garage was to a third party, Mrs. Cox. I conceive it quite impossible to conclude otherwise.

If I view these facts properly the language of the stipulation can only evidence an intention to alter Mrs. Cox's garage and this is evidence of an intention to stipulate an advantage in her favor as contemplated by Article 1890 of the LSA–Civil Code.

The form of a stipulation pour autrui is not sacramental. The question is "what was the intention of the parties, and that intention must be gathered, just as in the case of any other contract, from reading the contract, as a whole, in the light of the circumstances under which it was entered into." Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L.R.A. 650 (1905). See footnote 1 of majority opinion.

I respectfully dissent.

### ON REHEARING

HAMITER, Justice.

In the majority opinion originally rendered by this court herein the facts involved are fully set forth. They will not be repeated in this discussion, except when and where necessary.

Further, on the original hearing we affirmed the dismissal of plaintiff's suit by the Court of Appeal primarily on our conclusion that the construction contract between the defendant, W. R. Aldrich and Company, Inc. (hereinafter referred to sometimes as Aldrich), and the Louisiana Department of Highways (in which contract the former agreed to remove ten feet from the front of plaintiff's building and add it to the rear thereof) did not contain a stipulation pour autrui in plaintiff's favor within the contemplation of Articles

---

1. As I understand the facts, when the contractor realized that he could not profitably alter the garage for the $2,000.00 stipulated and comply with the promise which had been made to Mrs. Cox by the department, he sought to get her to agree to minimize her requirements and, when she would not agree to this, he sought to get her to accept the $2,000.00 in cash and when she steadfastly refused to accept any but the agreed upon alteration, the contractor defaulted in his obligation.

1890 and 1902 of the Revised Civil Code; and that, consequently, plaintiff acquired no rights against this defendant.

However, we also held originally that the record amply supported the conclusion of the trial judge (as affirmed by the Court of Appeal) that, even conceding the existence of a stipulation pour autrui in the contract, plaintiff had never accepted the advantages made in her favor—a prerequisite under the above cited codal provisions for the stipulation's irrevocability.

Our reconsideration of the record convinces us that this last mentioned holding was correct. Therefore, we shall pretermit herein the question of whether or not the agreement between this defendant and the Department contains such a stipulation pour autrui, and for the purpose of this discussion (without determining the correctness of our prior reasoning on that issue) we shall assume that it did.

As shown by the transcript before us the obligation undertaken by Aldrich relative to plaintiff's property, in its contract with the Department, was to "Cut off ten feet on front of garage & add to rear", for which it would be paid the sum of $2000. To support the contention that she had accepted such benefit made in her behalf (it is conceded by all parties that an acceptance was necessary for rendering the stipulation pour autrui irrevocable), the plaintiff relies on a letter signed by her, as well as on her own testimony given during the trial of the case.

The letter reads as follows:

"Abbeville, Louisiana
"November 21, 1956

"Department of Highways
State of Louisiana
Baton Rouge, Louisiana
"Gentlemen:

"You are hereby authorized to enter upon my property at the corner of Charity Street and Gertrude Avenue and to remove from Charity Street the pumps and canopy and also to make alterations to garage as specified on project plans.

"Very truly yours,
"Mrs. J. W. Cox"

At the outset it is to be noted that the letter is addressed to the Department of Highways, not to W. R. Aldrich and Company, Inc. (who is nowhere mentioned therein). Moreover, it contains no reference whatever to any contract between the Department and another party.

The letter is nothing more than an authorization by the plaintiff to the Department to come on her property conformably to her understanding of the pre-existing agreement with it. In no manner can it be considered as a communication written in contemplation, much less as an accept-

ance, of a contract entered into by the Department with Aldrich or with any other contractor.

Furthermore, it should be noted that the letter refers to acts to be done (removal of pumps and canopy) which were not mentioned in Aldrich's contract. Also, it is deemed appropriate to observe that the written authorization, although requested by the representatives of the Department, was executed by plaintiff (according to her testimony) in the office of her own attorney.

With further reference to plaintiff's testimony it is noticed that, in response to a question by her attorney, she stated that no one had offered to do anything to her building. However, this is denied by defendant's employees who testified that they had gone to plaintiff's property to commence the removal of the front ten feet of the building and that she had prevented their doing so. Also, witnesses for the defendant stated that they had called on plaintiff numerous times in an effort to settle the matter; but she insisted that additional work (other than moving ten feet of the building) be undertaken by Aldrich and, further, she demanded that a cash consideration be paid to her. They stated too that from time to time she changed her mind as to what she wanted done, at one point indicating that putting ten feet on the rear of the building would bring it too close to her residence.

■ We might well resolve this conflict in the evidence by merely deferring to the finding of the trial judge. However, our examination of the whole of plaintiff's testimony convinces us that she never unconditionally accepted the advantages stipulated by the defendant in her favor. Throughout such testimony is the assertion that she was willing for the defendant to carry out *her understanding* of *her* agreement with the *Highway Department* (not that she would permit Aldrich to change the ten feet of the building in accordance with its contract) which was that, besides the building's alteration, her gasoline pumps would be moved back, the property would be graded to conform to the new road level, and entrances and driveway approaches into the front of her building would be constructed.

Thus, she testified that at no time had she refused to let Aldrich or the Highway Department *fix the property and alter the building in accordance with what she understood to be the agreement;* that she had sought to ascertain what it would cost to put her "building back, that is, by taking ten feet off the front and adding it to the rear *and* reconstructing the *area in front* in a manner comparable to what it had been before the highway was widened"; and that she had refused to accept the $2000 offered her by Aldrich, because for that amount she could not fix her business as it was.

That plaintiff was insisting on work in addition to that contracted by Aldrich is further shown by the formal, written demand, made on the latter by plaintiff's attorney subsequent to the revocation of the stipulation pour autrui, wherein he states: "* * * Under the terms of State Project No. 55–06–13 you stipulated with the State of Louisiana to alter the building belonging to Mrs. J. W. Cox, by removing approximately ten feet of the front thereof adding the same to the rear of said building, renovating the front of said building, restoring two gasoline pumping units and fixing in a workman like manner the approaches thereto and area thereabout. You have failed to carry out the terms of these stipulations, even though Mrs. Cox advises me, that she was at all times willing to have her property restored and the alterations performed as called for by the specifications of said Project." Moreover, in the petition and in plaintiff's motion for a summary judgment the same demand is made.

■ Plaintiff may be correct in her assertion as to the extent of her contract with the Highway Department—that is, that its agents agreed to change the building *and to perform other work on the surrounding property, including removal and installation of the gasoline pumps.* But in this suit plaintiff is suing only Aldrich, the contractor, and such additional obligations clearly were not included in its contract with the Highway Department. Therefore, inasmuch as the defendant had never agreed to perform the extra work continually being demanded by plaintiff (as between those two, in other words, there was no meeting of the minds), it follows that plaintiff did not accept unconditionally the stipulation in her favor. (In passing, we observe that nothing that has been said herein is determinative of any claim which plaintiff may have against the Department of Highways.)

For the reasons assigned our original decree herein is reinstated and made the final judgment of this court.

McCALEB, J., concurs in the instant opinion but he also adheres to the views expressed in the original opinion that the contract sued on does not contain a stipulation pour autrui.

SANDERS, Justice (concurring).

The Standard Specifications forming part of the contract between Louisiana Department of Highways and W. R. Aldrich and Company contained the following provision:

"The Department reserves the right to eliminate from the work to be done by the contractor the removal of any or all of the buildings, structures and so forth, itemized under these items. if deemed advisable by the engineer.. * * *"

In conformity with this provision, the Highway Department eliminated the partial removal of the plaintiff's building from the work to be done. In my opinion, the modification was effective, though the plaintiff may have previously consented to avail herself of the advantage stipulated in her favor.

When the right to modify has been reserved in the contract, the contract may be modified even after the third party has consented to avail himself of the benefit. The theory is that the third party receives the stipulation with all of its built-in conditions and limitations. The right of the beneficiary can rise no higher than its source. See Dorsett v. Thomas, 152 La. 60, 92 So. 734; Pollock v. Pollock, 164 La. 1077, 115 So. 275; Alba v. Provident Savings Life Assurance Society, 118 La. 1021, 43 So. 663. 2 Planiol Civil Law Treatise (Translation by Louisiana State Law Institute) Nos. 1247 and 1261; Smith, J. Denson, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tulane L.Rev. 18, 56–57. Compare 17 Am.Jur.2d, Contracts, § 318, p. 747.

In 2 Planiol, Civil Law Treatise, No. 1247, cited supra, we find the following language:

"* * * [T]he will of the parties having created a right for the benefit of a third person, can cause it to exist with all the characteristics which it pleases them to give to it. Therefore,

they could have created this right as revocable if it seemed desirable to them."

Dr. J. Denson Smith states in 11 Tulane Law Review at pages 56–57:

"Given the consent on the part of the beneficiary to avail himself of the stipulation, his right can rise no higher than its source. Whatever conditions are attached thereto are effective. Likewise the promisor may oppose to the suit of the beneficiary any defenses arising from the contract which are available to him as against the promisee such as that the contract was ineffective because lacking in certainty, or unenforceable for reasons authorized by law, or that there was a failure of consideration, or of a condition upon which performance of the promise was made to depend."

Article 1902, LSA–C.C., making a stipulation irrevocable after the third party has signified his assent, is, of course, subject to the provision of the contract whereby the Highway Department retained the right to eliminate the removal of any building.

For the reasons assigned, I concur in the decree.

SUMMERS, Justice (dissenting).

I cannot agree with the conclusion of the majority on rehearing that, conceding the existence of a stipulation pour autrui,

"plaintiff has never accepted the advantages made in her favor."

The rights of the beneficiary of a stipulation pour autrui arise immediately upon the making of the contract although it is subject to revocation until acceptance.

"In fact the text of the Code does not require an 'acceptance'; it requires only 'consent' by the beneficiary 'to avail himself of the advantage'. In short, the right to the advantage is already his, it has already been acquired, and his 'consent' alone is necessary to render it indefeasible. Furthermore, no particular kind of 'acceptance' is necessary. Thus, the required consent may be found in any action by the beneficiary which manifests his recognition of the advantage or interest provided for him such as by undertaking to dispose of it, by acquiescing in the conduct of an assumer, by instituting suit, by accepting payments from the promisor in discharge of promisee's indebtedness, by notifying the promisor of the maturity of the debt, by granting the promisor an extension of time for payment, or in any manner authorized by the Code." 11 Tul.L.Rev. 18, 55 (1936).

It is to be observed from the quoted language, which I consider a correct and proper interpretation of the pertinent codal article, that the law is not to be concerned with niceties and formalities in resolving whether the beneficiary of a stipulation pour autrui has consented to avail himself of the advantages of that stipulation. Rather, I am of the opinion that the requisite consent may be satisfactorily established upon the slightest manifestation of consent by the beneficiary and that the consent may be established by direct evidence or by implication and circumstance.

Thus the letter of Mrs. Cox to the Department of Highways quoted in the majority opinion on rehearing is a clear manifestation of consent by Mrs. Cox to accept the benefits of the stipulation in her favor. It is unimportant that this consent was manifested to the Department and not to the contractor, Aldrich, as the majority seems to think. Aldrich has never taken the position that it was unaware of the fact that Mrs. Cox had consented to avail herself of the advantage. LSA–Civ.Code, arts. 1816, 1817, 1818. To the contrary the evidence is unmistakably otherwise. Mr. Holland, owner of Aldrich, testified:

"Q. Did you attempt to fulfill your contractual obligation with Mrs. Cox?

"A. Yes, sir.

      *     *     *     *     *     *

"Q. Did you ever tell Mrs. Cox that you would not cut off 10 feet and add it to the rear?

"A. No, sir. I couldn't tell anyone I would not do that. I was under bond to do that."

Thus I am of the opinion that the beneficiary consented to avail herself of the benefits of the stipulation in the manner above pointed out and, furthermore, her tacit consent is to be implied from her conduct or inaction and failure to protest when she permitted the Department to come upon her property and perform the work of clearing the right of way. Her consent to permit the Department to do the highway work was predicated upon the understanding that they would make the alterations to her premises or have the contractor do so. This consent, then, having been obtained in advance of the stipulation and in anticipation of the stipulation, as it were, made it quite clear to all involved that there could be little doubt that Mrs. Cox was ready to accept and desired the benefits of the stipulation in her favor. The fact is that these benefits were absolutely necessary to the continued useful life of this commercial property. The validity of this conclusion is made abundantly clear by the fact that this property has been rendered useless for its former purposes by the work of the Department and the failure of Aldridge to make the alterations stipulated for.

Another circumstance which impressed the majority and upon which its opinion appears to rest was its interpretation of the evidence leading to the conclusion that Mrs. Cox sought to obtain the removal of pumps and a canopy in addition to the alter-

ation of her garage. This additional requirement imposed by her, the majority holds, prevented her acceptance from being an unconditional acceptance in keeping with the stipulation pour autrui. But even if this version of the facts were correct, which I do not concede, it is quite evident from a reading of the record, and, particularly, the contract, that this work was within the contemplation of the parties and within the terms of the stipulation. The contract so provides, viz.:

"(4) The Department of Highways of the State of Louisiana, its Engineers, Agents and/or *Contractors shall* alter and/or *remove from the right of way* hereby conveyed, *all buildings and/or improvements, together with their appurtenances,* as prescribed in accordance with the construction plans for said State Project * * * and/or as designated by the District Engineer of the said Department." (Emphasis added.)

The other requirements which the majority seems to think Mrs. Cox sought to impose which were not in keeping with the stipulation, such as, grading the property to conform to the new road level and the construction of entrances and driveway approaches to the front of her building, I think, are so obviously necessary and such a standard procedure in highway construction that it is elementary that the perform-

ance of this kind of work is to be implied in every highway construction contract.

Even if we were to concede that the record supports a finding that Mrs. Cox sought to obtain more than was stipulated for her benefit, that, in itself, would not relieve the contractor of the task of altering the building, which was an advantage Mrs. Cox consented to avail herself of constituting an obligation the contractor unequivocally recognized. Nor should such a concession deter this court in making an award to Mrs. Cox for the value of that portion of the work required to be performed by the contractor about which there could be no question, either as to the stipulation in Mrs. Cox's favor or as to her consent to avail herself of its benefits. The fact remains, however, that the contractor did nothing and Mrs. Cox has received none of the advantages stipulated in her favor. The injustice which has resulted is therefore complete and not just partial.

The provision in the contract whereby the Department reserved the right to eliminate certain work to be done by the contractor, referred to in the concurring opinion of Mr. Justice Sanders, could not apply to work stipulated for the benefit of Mrs. Cox. This is so because the Department had taken over her property with the understanding that the work in question would be done for her. I am of the opinion that, by its actions in taking her property for its purposes, the Department abandoned the right to revoke any stipulation in her favor.

I, therefore, respectfully dissent.