**CITY OF SHREVEPORT**

v.

**GULF OIL CORPORATION.**

Civ. A. No. 74–522.

United States District Court,
W. D. Louisiana,
Shreveport Division.

June 18, 1975.

John Gallagher, Roland J. Achee, Neil Dixon, Charles C. Grubb, Atty., City of Shreveport, Shreveport, La., for plaintiff.

William G. Duck, Gulf Oil Co. Law Department, New Orleans, La., Caldwell Roberts, Mayer & Smith, Shreveport, La., for defendant.

STAGG, District Judge.

## OPINION

### STATEMENT OF THE CASE

This is an action for breach of contract filed by the City of Shreveport (City) against Gulf Oil Corporation (Gulf) wherein the City alleges that Gulf failed to provide 670,640 gallons of gasoline to the City pursuant to a contract existing between Gulf and the State of Louisiana, thereby damaging the City in the amount of $22,746.12.

The alleged legal relationship between the parties is based upon a written instrument executed by Gulf on May 12, 1972 and accepted by the State of Louisiana on May 30, 1972. Although the City was not a party to the execution of the instrument it alleges that it was a third party beneficiary under the contract.

Jurisdiction of this Court over the subject matter of this action arises by virtue of 28 U.S.C. Section 1332 as there is complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy exceeds $10,000.

The matter has been submitted to the Court for decision based on a stipulated set of facts and numerous items of documentary evidence.

### FACTS

On May 12, 1972 Gulf executed a bid proposal on state contract number 195–00–1522–820 the purpose of which was to secure petroleum products for the State of Louisiana as well as for various state agencies. On May 30, 1972 the Division of Administration of the State of Louisiana ac-

cepted Gulf's bid as to the items circled in the proposal.

The contractual period was for a term of 12 months beginning July 1, 1972 and ending June 30, 1973. However, prior to the effective date of the contract the contractual term was extended by the parties to September 30, 1973. Under the terms of the contract Gulf agreed to offer petroleum products for sale to all State agencies. These agencies included the Department of Public Safety, all charity hospitals of the State and the Louisiana Wild Life & Fisheries Commission. All agencies of the State, except the Highway Department and Louisiana State University, which were located in parishes covered by the contract were required to purchase their needs from the contract. In addition, the contract provided: "Political subdivisions of the State and quasi-State agencies who have been authorized to purchase from contracts made by the Division of Administration, are directed to issue their regular purchase orders to the supplier and making reference to the contract number; and these agencies are directed to send a copy of their purchase order to the purchasing section of the Division of Administration." Gulf was not specifically informed at the time of entering into the contract that the City of Shreveport (as a quasi-agency) had received permission to purchase under the contract.

At the time of execution of the contract, Gulf was informed as to the estimated quantities of petroleum products which would be required by the State and its agencies under the contract. However, Gulf was not informed as to the estimated quantities of products which the City of Shreveport would seek under the terms of the contract.

The City received permission from the Division of Administration to purchase under State commodity contracts by virtue of a letter from E. Guy Martin to Dwight E. Saur dated January 11, 1967, said permission being confirmed by letters from the Division of Administration and addressed to Mr. W. B. Holloway, Purchasing Agent for the City of Shreveport, dated May 31, 1971

and July 6, 1972. As a result the City had permission to purchase under the contract in question on the effective date thereof. The City did not submit any purchase orders under the terms of the said contract until May 1, 1973. Prior to sending this purchase order to Gulf, the City had executed a petroleum products contract with Conoco which ran from October 15, 1972 to April 15, 1973. In March of 1973 the City elected not to attempt to renew the Conoco contract but to seek bids from other oil companies to supply its petroleum needs. The City advertised for bids and received two bids in response thereto; one by Gaines-Walker Oil Company and one from Temple Oil and Tire Company. Both of these bids were rejected—the bid by Temple because it contained an escalation clause and the bid by Gaines-Walker due to excessive price. The City then advertised for bids a second time but no bids were received.

On April 25, 1973, in response to a telephone call from Mr. Holloway, Mr. John Kibbe, New Orleans Area Manager for Gulf Oil Corporation, wrote to the City stating: "With reference to our discussion concerning our future position to supply your fuel requirements under the State of Louisiana contract, we are attaching a copy of our letter to Mr. S. C. Spring, State Director of Purchasing, Baton Rouge, Louisiana. As stated in our letter to Mr. Spring, our supply position is quite critical. We regret that we do not have the supply available to take care of your future requirements." Attached to the letter of April 25, 1973 from Mr. Kibbe to Mr. Holloway was a letter dated April 17, 1973 from Mr. Kibbe to Mr. Spring in which Mr. Kibbe stated: "With reference to our discussion on April 16, 1973 regarding our future supply position to the State of Louisiana, we regret to report that our gasoline and diesel fuel supply position is quite critical and may result in future fuel allocation. It is our intention to fulfill our commitment to the State agencies up to our ability to perform, however, we will be unable to fulfill any additional purchase requests or future re-

quirements for the quasi-agencies within the State. Therefore, we wish to effect cancellation of our obligation under the Division of Administration contract number 195–00–1522–820 to supply all quasi-agencies."

Prior to May 1, 1973 Mr. Holloway was informed by the Division of Administration that the Division had relieved Gulf of the obligation to supply the City. On May 1, 1973 the City addressed to Gulf a purchase order for 8,000 gallons of Gulf No-Nox premium gasoline. On May 3, 1973, in a letter from Mr. Kibbe to Mr. Holloway, the purchase order was returned unfilled.

The Commissioner of Administration, Mr. Charles Roemer, assigned and delegated to Mr. Paul Hayes, Jr., Assistant to the Commissioner, the responsibility of granting, denying or cancelling permission of quasi-agencies or municipalities to purchase under State contracts. Mr. Hayes met with Mr. Spring and instructed that a letter be sent to the City of Shreveport cancelling Shreveport's permission to purchase under the contract. On May 8, 1973 Mr. Spring wrote to Mr. Holloway confirming that Gulf Oil was no longer obligated to supply the City under the State contract. Prior to sending the letter of May 8, 1973 Mr. Spring met with Mr. Kenneth DeJean, Assistant Attorney General for the State of Louisiana, to determine if the letter was in order and if he had the authority to write the letter to the City. Mr. DeJean read the letter and stated verbally to Mr. Spring that Mr. Spring had the authority to write the letter.

Mr. Holloway understood Mr. Spring's letter as attempting to cancel the City's permission to purchase under the contract. Gulf's letter of April 17, 1973 was the only documentary evidence of Gulf's inability to meet the needs of quasi-agencies which was submitted to Mr. Spring prior to his letter of May 8, 1973. However, Mr. Spring considered other factors such as private meetings with Gulf and a survey of 15 Southeastern states before sending the letter to the City.

The City did not send Gulf any more purchase orders after receiving the letter dated May 8, 1973 from Mr. Spring. On May 11, 1973 Mr. Kibbe wrote to Mr. Spring to confirm previous discussions that allocation of automotive gasoline began May 3, 1973 and therefore it would be difficult to supply any quasi-agency of the State who was not included on the original bid request. Subsequent to May 11, 1973, state agencies in Caddo Parish made purchases under the contract in question.

By letter dated October 3, 1973, Shreveport notified Gulf that it had breached the contract and, as a result thereof, had damaged the City.

## CONCLUSIONS OF LAW

In the pretrial order and in their trial briefs, counsel for the respective parties agree that this matter presents three legal issues for determination by this Court:

(1) Did Mr. S. C. Spring, acting pursuant to the directive of Mr. Paul Hayes Jr., have the legal authority under LSA–R.S. 39:171 to withdraw from the City of Shreveport its permission to purchase under the state commodity contract with Gulf?;

(2) Did Mr. S. C. Spring, acting pursuant to the directive of Mr. Paul Hayes Jr., and within the authority of General Condition No. 6, "Cancellation of Contract", cancel the contract insofar as it relates to the City of Shreveport?; and

(3) Is the City of Shreveport a third party beneficiary under the contract in question?

As the resolution of the first two issues depends upon that of the third, the issues will be treated in inverse order.

## WAS THE CITY A THIRD PARTY BENEFICIARY UNDER THE CONTRACT BETWEEN THE STATE OF LOUISIANA AND GULF?

Article 1890 of the Louisiana Civil Code provides:

4

"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked." As the article discloses, the fundamental basis of the creation of the third party relationship is that it form "the condition or consideration" of a contract between others rather than being a mere incident of that agreement. A stipulation *pour autrui* will be found and enforced only when the contract clearly contemplates the benefit to the third person as its "condition or consideration". *Gateway Barge Line, Inc. v. R. B. Tyler Co.*, 175 So.2d 867 (La.App. 1 Cir. 1965).

▪ It cannot seriously be disputed that the promise of Gulf to supply petroleum products to agencies and quasi-agencies confers some benefit upon the City of Shreveport. In a time of serious inflation and a shortage of energy, this contract allows Shreveport to purchase its fuel needs at a modest cost when compared to the market price of such products. However, this benefit does not serve to make the city a third party beneficiary under the contract. This is made clear in a comprehensive article on third party beneficiaries by Professor J. Denson Smith, now retired, a former Professor of Law at Louisiana State University Law School. In his article, Professor Smith states:

"* * * But it is also true that not every promise, performance of which may be advantageous to a third person, will create in him an actionable right. The problem is to separate the cases where an advantage relied upon is merely an incident of the contract between the parties. The most practical approach to this problem is to examine the relationship between the promisee and the third party who claims as beneficiary, for an advantage in his favor would not likely be contemplated in the absence of some legal or factual relationship between him and the promisee which would justify or

support its creation." (Footnote omitted.) Smith, "Third Party Beneficiaries in Louisiana: The Stipulation *Pour Autrui*", 11 Tulane L.Rev. 18, 28 (1936). See also *Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.*, 113 La. 1091, 37 So. 980, 986 (1905).

Professor Smith, at page 58 of his article, set out the factors by which to determine the presence of a factual or legal relationship between the promisee and the third party.

"In fine, in undertaking to determine whether an advantage for a third party has been provided by a contract between others, the following factors are important: (1) the existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promisee will discharge; (2) the existence of a factual relationship between the promisee and the third person, where, (a) there is a possibility of future liability either personal or real on the party of the promisee to the beneficiary against which performance of the promisee will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended."

By these criteria, there is no stipulation *pour autrui* in the contract between Gulf and the State of Louisiana. The contract was not made to obtain discharge of any legal obligation owed by the State to Shreveport. There was no possibility of future liability either personal or real on the part of the State to Shreveport against which performance by the State would protect the State. Furthermore, the advantage which would accrue to the City would not beneficially affect the State. Indeed, the evidence discloses that if the City and other quasi-agencies were allowed to purchase their needs under the subject contract, then Gulf would have to begin an

allocation program which would serve to further reduce the amount of petroleum products available to the State of Louisiana and its agencies. Finally, there are no ties of kinship or other circumstances indicating that the State intended to confer a gratuity upon the City.

From this, it is easily seen that the incidental benefit to the City was not "the condition or consideration" of Gulf's contract with the State of Louisiana. To the same effect, see *C. H. Leavell & Co. v. Glantz Contracting Corporation of Louisiana, Inc.*, 322 F.Supp. 779 (E.D.La.1971).

As the conclusion reached on the third party beneficiary issue precludes the necessity of resolving the remaining issues, they will not be discussed. However, even if the City were found to be a third party beneficiary under the contract between Gulf and the State of Louisiana, this Court has serious reservations as to whether the stipulation was accepted by the City prior to its express revocation by the Division of Administration. *Merco Manufacturing, Inc. v. J. D. McMichael Construction Co.*, 372 F.Supp. 967, 973 (W.D.La.1974); *Cox v. W. R. Aldrich & Co.*, 247 La. 797, 174 So.2d 634 (La.S.Ct.1964); *Citizens' Bank v. Miller*, 44 La.Ann. 199, 206, 10 So. 779, 781 (La.S.Ct. 1892); *Vosburg v. Federal Land Bank of New Orleans*, 172 So. 567 (La.App.2d Cir. 1937).

The demands of the plaintiff are hereby rejected at its costs. The defendant is hereby ordered to submit to this Court a judgment, approved as to form by the plaintiff, and consistent with the foregoing.