Robert J. FLECK, Norman A. Nelson, James A. Suchala, Richard A. Weber, and Robert Robbins, Plaintiffs and Respondents,

v.

NATIONAL PROPERTY MANAGEMENT, INC., a Utah Corporation, Ski Park City West, Inc., a Utah Corporation, Ensign Company, a Limited Partnership, and William S. Richards, Trustee, and the Travelers Indemnity Company, Defendants and Appellants.

No. 15480.

Supreme Court of Utah.

Jan. 31, 1979.

Wendell E. Bennett, Arthur H. Nielsen, Salt Lake City, Don R. Strong, Springville, for defendants and appellants.

John W. Lowe, Salt Lake City, for plaintiffs and respondents.

WILKINS, Justice:

Defendants Ensign Company (hereafter "Ensign") and The Travelers Indemnity Co. (hereafter, "Travelers") appeal from a judgment entered against all defendants in the amount of $7,200, by the District Court of Salt Lake County, sitting without a jury. None of the other defendants appeal.

Plaintiffs brought action for damages, claiming as third party beneficiaries, against a performance bond. The bond in question names Travelers as surety, Defendants Ensign, Ski Park City West, Inc., and William S. Richards, Trustee, as principals, and the County of Summit as obligee, and guarantees that the principals would perform installation of sewer, culinary water, and street improvements within cer-

tain tracts of land located in Summit County, known as Park City West Plat Nos. 1 and 2 Subdivisions.

The bond was submitted to Summit County in compliance with that County's ordinance No. 58, as a substitute to actual construction of the improvements, in order to gain the approval by the County of the final subdivision plats, and the acceptance by the County of those areas within the subdivision dedicated as public streets and parks. Ordinance No. 58 also provides that no sale of subdivision lots shall be made before approval and recordation of the final plats.

After the bond was executed, and the plats approved and recorded, plaintiffs entered into a uniform real estate contract for the purchase of three of the subdivision lots with Defendant National Property Management, Inc. (hereafter "National"), as seller, said company having acquired its title through Defendant Ski Park City West, Inc. The total purchase price of the three lots was $36,000, and plaintiffs paid an aggregate sum of $7,200 as a down payment. As a part of said contract, National covenanted to construct the improvements on the land by December 31, 1972, and later agreed with plaintiffs that the latter need not make any further payments on the contract until the improvements were in. At the time of the execution of the contract, the land comprising the entire subdivision was subject to large first and second trust deeds, and all of this information was disclosed to plaintiffs. Shortly after plaintiffs recorded their real estate contract, and prior to the time any of the improvements were constructed, plaintiffs' interest in the land was foreclosed by sale under the trust deeds. Plaintiffs did not attempt to redeem their interest. They assert that the lots without improvements did not have sufficient value to warrant further investment, and that they minimized their losses by refusing to redeem.

Defendants argue, inter alia, that the damages suffered by plaintiffs were not caused by the failure to construct the improvements on the property, and further that the evidence does not support the judgment against these defendants.

There is no doubt that National breached its contract to construct improvements on the property, and there is no doubt that Travelers, as surety, and Ensign, as a principal, guaranteed that the improvements would be constructed, and would therefore be liable for the costs of such construction. But there is no evidence in this record of what the cost of improving these three lots would have been. The damages awarded plaintiffs was the amount they paid on the purchase price. We do not believe that the parties to the indemnity agreement and bond contemplated the risk of such losses, and particularly when such losses were not correlated with the cost of improvements.

In the case of *Pacific Coast Title Ins. Co. v. Hartford Accident and Indemnity Co.*, 7 Utah 2d 377, 325 P.2d 906 (1958), this Court stated the general law:

> The rule as to what damages are recoverable for breach of contract is based upon the concept of reasonable foreseeability that loss of such general character would result from the breach. Therefore, to be compensable, the loss must result from the breach in the natural and usual course of events, so that it can fairly and reasonably be said that if the minds of the parties had adverted to breach when the contract was made, loss of such character would have been within their contemplation.

In the *Hartford* case we held that the loss involved there was the kind of loss that Hartford's bond covered. In applying the rule to this case, however, we must come to the opposite conclusion. Could it reasonably have been foreseen that the natural and usual consequences of the failure to construct the improvements would bring about the foreclosure of the trust deeds and loss of title? Did the loss of plaintiffs' down payment result from the breach of the promise to construct improvements in the natural and usual course of events? We think not. Travelers' bond was not given to guard against this kind of damage but rather the cost of improvements (and as noted

ante there was no evidence concerning this cost).

Defendants raise other points of law, but as the point addressed is dispositive, we do not discuss them. The District Court's judgment against these two defendants is reversed. Costs to defendants.

ELLETT, C. J., and CROCKETT and MAUGHAN, JJ., concur.

HALL, Justice (concurring in result).

I concur in the result reached by the majority opinion but wish to state a different reason for doing so. It is my opinion that the conclusion on foreseeability of loss cannot be reached without first making a determination as to whether or not the plaintiffs have a legal right to proceed against the bond under a third-person beneficiary theory. It is my view that they cannot.

It has been a long-standing rule that notwithstanding the theory of third-party beneficiaries, a third person who is not named in the bond cannot recover.[1] The reason for this restriction is that the bond is not usually made for the benefit of a third person who is not designated therein unless it appears that it was intended by the parties that such third persons should be a beneficiary of the bond.

This Court has defined such intent as running to a third person's right to enforce a contract as depending on whether the parties had a purpose or object to benefit the third person.[2] That benefit, of course, must be a direct rather than an incidental one. The distinguishing characteristics of donee, creditor, and incidental beneficiaries were discussed by this Court in *Schwinghammer v. Alexander*,[3] wherein we adopted the language set forth in Corbin on Contracts as follows:

. . . the only third parties who have legal rights are the donees and the creditors of the promisee. If . . . the promisee expresses an intent that some third party shall receive either the security of the executory promise or the benefit of performance as a gift, that party is a donee . . . . If, on the other hand, the promisee's expressed intent is that some third party shall receive the performance in satisfaction and discharge of some actual or supposed duty or liability of the promisee, the third party is a creditor beneficiary. *All others who may in some way be benefited by performance have no rights and are called incidental beneficiaries.* [Emphasis added.]

There is no question but that the plaintiff in this case must qualify as a donee beneficiary in order to have standing to maintain suit. This is dependent on the intent of the parties at the time the contract and bond were entered into, and it must clearly appear that the parties intended to confer such a benefit before the contract will be construed as creating rights in third persons.[4]

The ordinance which gave rise to the bond in issue was Summit County Ordinance No. 58 which states that its underlying purpose and intent "is to promote the health, safety, convenience and general welfare of the inhabitants." The pivotal question involved is whether the language of the ordinance creates a class of beneficiaries that is intended to be a direct beneficiary of the required bond such that any member of the class who suffers injury may seek a private remedy against the principals of the bond. It appears that the purpose of Ordinance No. 58 and of similar ordinances that exist in other jurisdictions have as their main purpose the objective of protecting the public by assuring that before the county takes responsibility for the mainte-

1. *Hedberg & Sons Co. v. New Amsterdam Casualty Co.*, 274 Minn. 422, 144 N.W.2d 263 (1966); *Cleveland Window Glass & Door Co. v. National Surety Co.*, 118 Ohio St. 414, 161 N.E. 280 (1928); see also, 11 A.L.R.2d 1007 and annotation in 11 A.L.R.2d 1011 § 2.

2. *Kelly v. Richards*, 95 Utah 560, 83 P.2d 731 (1938).

3. 21 Utah 2d 418, 446 P.2d 414 (1968).

4. *Cox v. W. R. Aldrich & Co.*, 247 La. 797, 174 So.2d 634 (1964).

nance of streets and other facilities that the required improvements have been completed so as not to burden the public with that added expense. Such a purpose comports with the "general welfare" language of the ordinance and seems to suggest a larger concern for the society as a whole, rather than a concern for the protection of individual citizens against damage to their private property.

There is authority for the proposition that where the beneficiaries are indeterminate or general in nature, there must appear more than an intention that the promise is made for the benefit of the public or for a class of indefinite extension and that before a third person can recover, the promise must be to make reparation directly to individual members of the public if the benefit is lost.[5] I believe this to be a sound rule and that the purpose referred to in Ordinance No. 58 is a general concern for the public at large and is not intended to redound to the benefit of any individual member for personal and private losses, should a private developer breach its contract with the county to make promised improvements.

Other jurisdictions have also refused to permit third persons, not named in the bond, from suing under a third-party beneficiary theory. In *Morro Palisades Co. v. Hartford Accident & Indemnity Co.*,[6] the California Supreme Court held that a third-party landowner had no right to sue under a performance bond between a county and a land developer, and at page 631 made the following statement:

> . . . the right to recover under the bond appears clearly to be a right of the county, rather than the owner of a portion of the property which might be affected by the default . . .
>
> \* \* \* \* \* \*

. . . The bond in issue here is conditioned for the benefit of the obligee county and by no possible view of its language can it be held to have been 'furnished for the direct benefit and protection' of the . . . other land owners in the tract . . .

Other jurisdictions have also subscribed to that view.[7]

The performance bond and Ordinance No. 58 are directed only at assuring the installation of improvements. There is no language in either that infers the right of third parties to bring private damage claims, using the bond as a source of funding for those claims. Any recourse the plaintiffs may have does not relate to the performance bond issued between the county and the developer.[8]

The reasoning of these cases supports the traditional rule that if a third person is not named in the bond, he cannot recover under a third-party beneficiary theory unless it is clear that the parties intended otherwise. Neither a class nor the individual plaintiffs were named or impliedly referred to, and I find no intention in either the bond or the ordinance to extend protection to third persons in the event of loss due to the defendants' failure to perform the contract.

The majority opinion is correct when it states that the bond was given to guarantee the cost of improvements and did not contemplate the kind of loss suffered by the plaintiffs. The reason for this, however, is because the language contained in the instrument cannot be construed as an intent to directly benefit third persons so as to create a donee beneficiary statute.

There appears to be no persuasive authority to justify changing this long-standing precedent. Therefore, the fact that the plaintiffs may have received a benefit had

---

5. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (C.A.N.Y.1931); see also discussion in 74 A.L.R. 1139.

6. 52 Cal.2d 397, 340 P.2d 628 (1959).

7. See, for example, *J & J Tile Co., Inc. v. Feinstein*, 43 A.D.2d 529, 348 N.Y.S.2d 783 (Sp.Ct.

App.Div.1973); *Ragghianti v. Sherwin*, 196 Cal. App.2d 345, 16 Cal.Rptr. 583 (Cal.1961).

8. It is to be observed that plaintiffs may very well have an adequate "practical" remedy available to them, viz., that of insisting that Summit County exert its right against the performance bond.

the improvement been completed is not determinative, for any benefit received would have been merely an incidental one. Thus, the plaintiffs cannot be donee beneficiaries and have no standing to maintain suit under a third-person beneficiary theory.